**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-02353-GPG-TMO

VICTOR MOSES,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.

    Defendants.

---

**DEFENDANTS COURTNEY WHAM AND TAEGIN SUNG'S
MOTION TO DISMISS**

---

Defendants, Courtney Wham and Taegin Sung ("Defendants Wham and Sung"), by and through their counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby respectfully submit their Motion to Dismiss. In support, Wham and Sung state as follows:

**CERTIFICATION CONCERNING CONFERRAL**

Pursuant to GPG Civ. Practice Standard 7.1B(b), counsel for Wham and Sung has conferred with counsel for Plaintiff regarding this Motion. Plaintiff opposes.

**SUMMARY OF MOTION AND BACKGROUND**

This is a classic case of asserted constitutional claims which are truly purported allegations of negligence. Plaintiff, Victor Moses, brings six claims for relief in his Complaint. Three of the claims (claims 2, 4 and 6) are brought against Defendants Wham and Sung. At all relevant times, Wham and Sung worked for Denver Health and Hospital

Authority as paramedics.[1] On January 6, 2023, Plaintiff was involved in an employment training exercise with the Denver Police Department ("DPD"), going through defensive action drills with the rest of his cadet class. At no point was Plaintiff under arrest, a pretrial detainee, or incarcerated. During his training, Plaintiff became "extremely fatigued" and experienced "extreme leg cramps." (D. 3 at ¶ 74). Paramedics Wham and Sung were called over to the area by DPD to evaluate Plaintiff. *Id.* at ¶ 70. Plaintiff was conscious and speaking. *Id.* at ¶ 74. He described his symptoms and told paramedics Wham and Sung that he had "sickle cell trait, but not sickle cell." *Id.* at ¶ 81. Plaintiff continued the training exercises. *Id.* at ¶ 93. While performing the next training section, Plaintiff became limp and unresponsive. *Id.* at ¶ 97. Paramedics Wham and Sung transported Plaintiff to the nearest hospital which was University of Colorado Hospital.[2]

Plaintiff's claims should be dismissed as Wham and Sung were not personally involved in the alleged deprivation of Plaintiff's civil rights. Defendants Wham and Sung were not employees of the DPD nor authorized to act on behalf of the DPD. Rather, they were stationed at the training exercise for the purpose of providing emergency medical services as needed, similar to being stationed at other occasions such as parades or sporting events. Moreover, Plaintiff's claims for willful and wanton misconduct are not supported by the allegations. Defendants Wham and Sung globally address Plaintiff's

---

[1] Denver Health and Hospital Authority is a separate entity of the City and County of Denver. Denver Health is a political subdivision of the State of Colorado pursuant to C.R.S. § 25-19-101.

[2] The name of the hospital Plaintiff was transported to is not named in the complaint. It is undisputed Plaintiff was transported to University of Colorado Hospital, not Denver Health.

2

claims in Section I below, but a specific discussion of each claim against them is contained in Sections II-IV.

## STANDARD OF REVIEW

**Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted." First, a plaintiff must plead facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations which are legal conclusions, bare assertions, or merely conclusory are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

The court must consider the factual allegations to "determine if they plausibly suggest entitlement to relief." *Id.* at 681. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555. Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face if the allegations are "so general that they encompass a wide swath of conduct, much of it innocent," and if the plaintiff has

3

failed to "nudge claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

## ARGUMENT

### I. The Claims Against Wham and Sung Are Not Constitutional in Nature

Plaintiff asserts negligence against Defendants Wham and Sung rather than constitutional claims. This is a classic example of shifting the *constitutional vs. negligent* burden. Plaintiff alleges in Claims 2 and 6 that Defendants Wham and Sung violated his constitutional rights, however, a review of the facts pled reveals, at most, claims for medical negligence or tort. The facts do not rise to a level of constitutional infringement and should be dismissed. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (holding that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation").

#### A. Defendants Wham and Sung were not personally involved in the deprivation of Plaintiff's constitutional rights.

A review of the allegations of the Complaint shows that Plaintiff's § 1983 claims are based on legal conclusions and devoid of any facts that would plausibly support his assertion that Defendants Wham and Sung personally deprived him of any liberties. Plaintiff was not in custody, a pre-trial detainee, nor a prisoner during the incident complained. Plaintiff was an *employee* of the DPD participating in a training program which was not affiliated with Denver Health in any way. While Plaintiff alleges that Defendants Wham and Sung were "police adjuncts" this is a false conclusion. (D. 3 at ¶¶ 386, 391). Plaintiff has not alleged any plausible facts that suggest Wham and Sung were employed by or affiliated with the DPD. Moreover, at no time was Plaintiff in police custody.

4

Plaintiff alleges that he became so incapacitated that "he was in police custody." (D. 3 at ¶ 238). Plaintiff's allegations run counter to established precedent. Being in state custody requires at a minimum that a person is being held against his will. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989) (noting when the state takes a person into its custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being). Plaintiff's encounter with the DPD was a voluntary employment exercise; he could not reasonably believe he was in police custody.[3]

Plaintiff claims Defendants Wham and Sung should not have "cleared" him to continue training after they were called over to evaluate him. Here, Plaintiff seeks to have it both ways. He claims he was in the paramedics' custody, but he also complains that Defendants Wham and Sung released him from their care. The very allegation that Defendants Wham and Sung should not have released him from care supports that they did not hold Plaintiff in "custody."

Assuming, *arguendo,* that Plaintiff was in police/state custody, his claim still fails against paramedics Wham and Sung because they were not personally involved in the claimed constitutional violations. For liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Anglin v. City of Aspen, Colo.*, 552 F.Supp.2d 1205 (D. Colo. 2008). "Because vicarious liability does not apply to § 1983, 'a plaintiff must plead that each Government-official defendant, through

---

[3] Plaintiff admits in his Complaint that he is receiving Workers' Compensation benefits from the City and County of Denver for the injuries he sustained as an employee of the DPD. (D. 3 at ¶ 341).

5

the official's own individual actions, has violated the Constitution.' As a result, a § 1983 plaintiff must show an 'affirmative link' between each defendant and 'the constitutional violation,' which requires proof of three interrelated elements: (1) personal involvement; (2) causation; and (3) state of mind." *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla.*, 107 F.4th 1121, 1136 (10th Cir. 2024) (internal citations omitted).

Plaintiff's Complaint does not satisfy any of these elements. Plaintiff does not allege any specific care Defendants Wham and Sung should have rendered, nor does he complain of involuntary care forced upon him by the paramedics. Further, Plaintiff does not complain that Defendants Wham and Sung personally restrained him or used any force against him, whatsoever. Rather, Plaintiff alleges the paramedics "agreed to return Moses into the drill for further physical battering" by members of the Denver Police Department. (D. 3 at ¶ 242). Plaintiff does not allege the paramedics were personally involved in committing these physical assaults. Instead, Plaintiff claims Wham and Sung should "have been there to protect" him and that they "refused to intervene to protect Moses's health and welfare." (D. 3 at ¶¶ 246, 247). This is insufficient to establish a § 1983 claim. With no deprivation of an individual right, there is nothing in which to intervene. *Routt v. Howard*, 764 F. App'x 762, 768 (10th Cir. 2019).

In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties. The "danger creation" exception to this rule applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001). "To state a prima facie case, the plaintiff must show that (1) state actors created the danger

6

or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1251 (10th Cir. 2008). Plaintiff fails to allege any of these necessary elements to support the "danger creation" exception.

In short, Plaintiff cannot establish the personal involvement necessary to support a constitutional claim against the paramedics. Nor can Plaintiff demonstrate how Wham and Sung caused any constitutional violation. Causation requires the plaintiff show the defendants' alleged conduct caused the constitutional violation "by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Walton v. Gomez (In re Estate of Booker)*, 745 F.3d 405, 435 (10th Cir. 2014). Plaintiff's claims against the paramedics therefore fail as a matter of law.

**B. Defendants Wham and Sung are entitled to qualified immunity.**

*i. Federal qualified immunity*

The doctrine of qualified immunity shields government officials from individual liability when they are performing discretionary functions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Currier*, 242 F.3d at 923. "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability."

7

*Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Whether a defendant is entitled to qualified immunity is a question of law. *Derda v. City of Brighton*, 53 F.3d 1162, 1164 (10th Cir.1995). Once a defendant claims qualified immunity, the plaintiff bears the "heavy two-part burden" of demonstrating that: (1) the defendant's alleged actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the alleged violation*. Trigalet v. Young*, 54 F.3d 645, 647 (10th Cir.1995). Plaintiff's "factual allegations must be specific and non-conclusory, and sufficient for a district court to determine those facts, if proved, demonstrate the defendant is not entitled to qualified immunity." *Currier*, 242 F.3d at 912, (citation and internal quotations omitted).

Plaintiff has failed to plead that the actions of Defendants Wham and Sung form the basis of constitutional claims. Moreover, to verify that a right is "clearly established" for purposes of the second prong of the qualified immunity test, the plaintiff must "identify an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). Pursuant to the holdings of the Supreme Court, the lower courts should "not define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Plaintiff's constitutional claims against Defendants Wham and Sung fail because he has not demonstrated that their actions violated any constitutional or statutory right. Moreover, Plaintiff has not demonstrated that a reasonable paramedic in Defendants Wham and Sung's position would have known that treating and releasing a non-detained individual would have somehow violated the Fourth or Fourteenth Amendment. *Harlow v.*

*Fitzgerald, supra.*[4] Because Plaintiff did not adequately plead a constitutional violation and because the right he asserts Defendants Wham and Sung violated was not clearly established, the paramedics are entitled to qualified immunity on Plaintiff's federal-law claims against them.

   *ii. State qualified immunity*

Plaintiff alleges that Defendants Wham and Sung's acts or omissions were "willful and wanton" and thereby voided any claims for qualified immunity under § 24-10-118, C.R.S. However, a review of the pleaded facts show that this allegation is a mere conclusion and the facts pled do not meet the willful and wanton standard to disqualify Wham and Sung from qualified immunity.

   Section 24-10-118(2)(a), C.R.S. (2024) provides that:

> A public employee shall be immune from liability in any claim for injury, whether brought pursuant to this article, section 29-5-111, C.R.S., the common law, or otherwise, which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant and which arises out of an act or omission of such employee occurring during the performance of his duties and within the scope of his employment unless the act or omission causing such injury was willful and wanton..."

Thus, per the language of the statute, the act or omission must (1) have caused the injury and (2) have been willful and wanton. In *Quintana v. Dodge*, No. 23-1113, 2024 WL 1048959 (10th Cir. March 11, 2024), the court answered the question, "what makes conduct willful and wanton?" Conduct is considered willful and wanton under Colorado's Governmental Immunity Act only when (1) the conduct had been specifically calculated

---

[4] There is no published Supreme Court or Tenth Circuit case holding that a paramedic is required, or has a duty, to intervene during a police training exercise where a cadet is involved or which establishes that paramedics have the obligation to intervene where police are conducting a training exercise, generally.

9

to cause the alleged harm; or (2) the defendant had been aware that the conduct would cause the harm. *Id. at *4*; *McDonald v. Wise*, 769 F.3d 1202, 1218 (10th Cir. 2014). Negligence does not imply willful and wanton conduct. *Quintana*, 2024 WL 1048959, at *5, (citing *Martinez v. Estate of Bleck*, 379 P.3d 315, 318 (Colo. 2016) (willful and wanton conduct requires more than a failure to reasonably recognize the danger)). Plaintiff has not met his burden.

Plaintiff alleges that Defendants Wham and Sung should not have "cleared him to continue," but does not allege any specific paramedical care that should have been rendered other than the blanket conclusion that he should have been transported to the hospital even though he was conscious, speaking, and wished to continue. (D. 3 at ¶¶ 86, 424). There are no factual allegations in the Complaint that reasonably support the proposition that Defendants Wham and Sung specifically calculated or planned for Plaintiff to sustain his injuries. Similarly, there are no facts in the Complaint to support the proposition that they *were aware* that releasing Plaintiff would cause him to suffer a cascade of other symptoms once they transported him to the University of Colorado Hospital. Again, for Plaintiff to succeed, he must show more than Defendants Wham and Sung should reasonably recognized the danger; they must have been specifically cognizant of the danger.

Moreover, Plaintiff does not allege any plausible facts which support the proposition that Defendants Wham and Sung *were permitted* to hold Plaintiff back from continued training against his consent. In other words, if the allegations of Plaintiff's claims are held to be true, paramedics Wham and Sung were required to go against Plaintiff's own decision to continue his training, his decision to continue the training drills

10

and force him to stop. The same holds true for Plaintiff's allegation that Defendants Wham and Sung misled physicians at the hospital. As discussed in detail below, Plaintiff asserts no facts that the hospital doctors would have employed a different course of treatment which would have produced a different outcome but for anything Defendants Wham and Sung did or did not say. It is a prerequisite that for any act or omission to be actionable, it must have caused an actual injury. Section 24-10-118(2)(a), C.R.S. (2024).

II. **Defendants Wham and Sung Did Not Violate Plaintiff's Fourth Amendment Rights Against Unreasonable Seizure or Exercising Excessive Force. (Claim 2)**

At no time did Defendants Wham and Sung participate in any "unreasonable seizure" of Plaintiff. Likewise, they did not participate in any "excessive force" against Plaintiff. Indeed, Plaintiff does not allege that Defendants Wham and Sung personally used any force against Plaintiff. Because Wham and Sung were not personally involved in any force against Plaintiff, such claims must be dismissed. *Anglin, supra; see also Trujillo v. Williams,* 465 F.3d 1210, 1227 (10th Cir. 2006) ("for liability to arise under [Section] 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established").

The Complaint erroneously seeks to include Defendants Wham and Sung by claiming that they improperly cleared Plaintiff, who was conscious and speaking, to continue training. (D. 3 at ¶ 74). Plaintiff has made no showing that Defendants Wham and Sung participated in any way with the promulgation of any of the DPD's Defensive Action Day or its training policies. Plaintiff has not shown that they had the authority to participate in the training by monitoring or "clearing" the trainees. The paramedics were simply there to facilitate any emergent care needed, by request of the DPD.

11

Plaintiff claims that the "paramedics know that they were required to intervene to stop excessive police force from being inflicted on incapacitated persons in their custody and care." (D. 3 at ¶ 379). Plaintiff has not shown that there was any "police action." Plaintiff has not shown that he was in police custody or subject to police force simply by virtue of being employed by DPD and participating in a physical training exercise. Plaintiff has not claimed that any force was used against him while being treated by Defendants Wham and Sung. Plaintiff concludes that Defendants Wham and Sung were "police adjuncts and agents," but he has not pled any facts sufficient to show any employment authority or a sufficient nexus with DPD. Accordingly, such a claim must fail.

Even if this court were to find a nexus between Defendants Wham and Sung and the DPD, his claim still fails. When evaluating a Fourth Amendment excessive force claim, the court must employ an objective reasonableness standard. This test requires an evaluation from the on-scene perspective and not with the advantage of 20/20 hindsight. *Jiron v. City of Lakewood*, 392 F.3d 410, 418 (10th Cir. 2004). Plaintiff has not shown that at the time he returned to training, Defendants Wham and Sung's actions were objectively unreasonable, and he is asking this court to impermissibly evaluate his situation with the benefit of that hindsight.

**III. Defendants Wham and Sung Did Not Violate Plaintiff's Fourteenth Amendment Rights By Exhibiting Deliberate Indifference to Plaintiff's Medical Needs. (Claim 6)**

The Supreme Court first recognized a § 1983 claim for deliberate indifference under the Eighth Amendment, which protects the rights of convicted prisoners. The theory espoused by the Supreme Court was that deliberate indifference to a convicted prisoner's medical needs constitutes cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S.

12

pg 13 of 17

97, 104 (1976). This right was later extended to pretrial detainees under the Fourteenth Amendment. *Garcia v. Salt Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985). The same deliberate indifference standard applies no matter which amendment provides the constitutional basis for the claim. *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020).

Plaintiff improperly seeks to extend this Fourteenth Amendment claim to a private individual free from state custody. The Supreme Court has held that the Due Process Clause does not impose a duty on a state to protect the life, liberty, and property of citizens from deprivations by private actors absent the "[s]tate's affirmative act of restraining the individual's freedom to act in his own behalf." *DeShaney*, 489 U.S. at 200. In *Maldonado v. Josey*, 975 F.2d 727 (10th Cir. 1992), the court recognized that this affirmative duty has been found to exist in only a few, limited situations: the provision of adequate medical care to prisoners (Eight Amendment); provision of adequate medical care to suspects in police custody/pretrial detainees (Fourteenth Amendment); and the provision of adequate services to involuntarily committed mental patients. The court in *Maldonado, supra,* specifically declined to extend this affirmative duty to students subject to compulsory attendance laws. Because Plaintiff was not in state custody, his claim fails.

Assuming *arguendo*, Plaintiff was in custody, he still fails to make a deliberate indifference claim against Defendants Wham and Sung because the facts as pled by Plaintiff at most rise to a negligence claim. The provision of negligent care does not rise to the high level of deliberate indifference. *Perkins v. Kan. Dep't of Corr.*, *supra.*

**IV.    Plaintiff Failed to Establish a Claim for Relief for Willful and Wanton Acts or Omissions. (Claim 4)**

Plaintiff alleges claims for willful and wanton acts but does not plead any underlying claim for relief for paramedical negligence. He alleges mere conclusions that do not

13

provide any claim for relief. Plaintiff surmises that Defendants Wham and Sung knew he had "hit his head hard on the tile; had fallen repeatedly; had lost his ability to consent, and that many of these symptoms are associated with an extremely dangerous sickling event requiring emergency medical attention." (D. 3 at ¶ 437). The facts alleged by Plaintiff show that Defendants Wham and Sung were called over when Plaintiff needed medical care. *Id.* at ¶¶ 70,72. There would be no need to be called over if they had line of site and were monitoring the situation as alleged. Plaintiff was conscious and speaking to Defendants Wham and Sung, which belies the conclusion that he could not consent. *Id.* at ¶ 74. Plaintiff concludes that Defendants Wham and Sung knew his symptoms were associated with a sickling event requiring emergency medical attention, however, he does not allege any particular medical attention needed at that time or that Defendants Wham and Sung had the ability to restrict Plaintiff's choice to continue the training exercise. Plaintiff willingly consented to continue the drills associated with the DPD's training exercise, but also asserts the paramedics should have taken away his right to do so. *Id.* at ¶¶ 86, 90, 145. Plaintiff concludes that Defendants Wham and Sung joined and approved the "continuation of obviously excessive force." There is not one fact claimed that Defendants Wham or Sung used any force whatsoever on Plaintiff. Plaintiff's only nexus to the use of force is that the paramedics discontinued treatment once Plaintiff was stable and consented to continue. Even if there is a disagreement about whether Plaintiff was stable, that would be a difference of medical opinion and not a willful or wanton act.

Plaintiff further alleges that Defendants Wham and Sung misled Emergency Room doctors. *Id.* at ¶440.  While this is adamantly disputed, even if accepted as true, the allegation alone does not provide a basis for relief. Plaintiff alleges that Defendants Wham

14

and Sung falsely stated that Plaintiff had not experienced "direct trauma." However, the only specific fact pled in this regard, notes that the medical chart indicates that the "Police Academy Instructor" denied direct trauma. *Id.* at ¶106.

Moreover, Plaintiff does not state what harm any such alleged denial of trauma caused. In other words, Plaintiff fails to plausibly allege that the medical team at University of Colorado Hospital only took directives from the paramedics in determining their course of treatment for Plaintiff, and therefore failed to exercise their own independent medical judgment or decision making in the process. Plaintiff states that the medical team made decisions based on being misled, but he does not state that those decisions were the cause of Plaintiff's injuries. There is no claim that a different course of treatment would have been pursued by the doctors if they had been alerted to "direct trauma," or that a different course of treatment would have provided a different outcome. Because there is no claim that any alleged misrepresentation was the proximate cause of Plaintiff's injuries, his claim against Defendants Wham and Sung must fail. *See Berg v. U.S.*, 806 F.2d 978 (10th Cir. 1986) (Colorado law provides that a negligent party is liable for his or her negligence only if that negligence was the proximate cause of the plaintiff's injury).

## CONCLUSION

For the reasons stated herein, Defendants, Courtney Whan and Taegin Sung, request this Honorable Court to dismiss all claims against them, with prejudice.

DATED at Denver, Colorado this 21st day of October, 2024.

s/ Anthony E. Derwinski
Anthony E. Derwinski, Esq., Colo. Bar #44408
Michele Stark Carey, Esq., Colo. Bar #27225
Jeff C. Staudenmayer, Esq., Colo. Bar #42981
Ruegsegger Simons & Stern, LLC
1700 Lincoln Street, Suite 4500

15

Denver, Colorado 80203
Phone:  303.623.1131
E-mail: aderwinski@rs3legal.com
*Attorneys for Wham and Sung*

Case No. 1:24-cv-02353-GPG-TPO   Document 33   filed 10/21/24   USDC Colorado   pg 16 of 17

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

s/ Anthony E. Derwinski