IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02353-GPG-TMO

VICTOR MOSES,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, et al.

    Defendants.

---

## DEFENDANT DENVER HEALTH AND HOSPITAL AUTHORITY'S MOTION TO DISMISS

---

Defendant, Denver Health and Hospital Authority ("Denver Health"), by and through its counsel, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby respectfully submits its Motion to Dismiss, as follows:

### CERTIFICATION CONCERNING CONFERRAL

Pursuant to GPG Civ. Practice Standard 7.1B(b), counsel for Denver Health has conferred with counsel for Plaintiff. Plaintiff opposes.

### SUMMARY OF MOTION

Plaintiff, Victor Moses, summarily fails to state a plausible claim for relief against Denver Health (claims 2, 5, 6). Denver Health is a separate entity from the City and County of Denver and a political subdivision of the State of Colorado pursuant to C.R.S. § 25-19-101.

On January 6, 2023, Plaintiff was involved in an employment training exercise with the Denver Police Department ("DPD"). Plaintiff was an employed police cadet going

through defensive action drills with the rest of his class. At no point was Plaintiff under arrest, a pretrial detainee, or incarcerated. During the training, Plaintiff became "extremely fatigued" and experienced "extreme leg cramps." (D. 3 at ¶ 74). Paramedic Defendants, Courtney Wham and Taegin Sung ("Wham and Sung"), were stationed near the drills and were called over by DPD officers to evaluate Plaintiff. *Id.* at ¶ 71. Plaintiff was conscious and speaking. *Id.* at ¶ 74. He described his symptoms and told paramedics Wham and Sung that he had "sickle cell trait, but not sickle cell." *Id.* at ¶ 81. Plaintiff then continued the training exercises. *Id.* at ¶ 94. While performing the next training station, Plaintiff became limp and unresponsive. *Id.* at ¶ 97. Paramedics Wham and Sung rendered care and transported Plaintiff to University of Colorado Hospital.[1]

The allegations against Denver Health complain of violations of constitutional rights and alleged negligence in the operation of a public hospital. The complaints against Denver Health stem from the claims against Wham and Sung, employees of Denver Health, who attended to Plaintiff at his employment training with the DPD. Plaintiff was not transported to or treated at Denver Health.

## **STANDARD OF REVIEW**

**Rule 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) allows a defendant to move to dismiss a claim for "failure to state a claim upon which relief can be granted." First, a plaintiff must plead facts which allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[1] It is undisputed that Wham and Sung transported Plaintiff to University of Colorado Hospital, although not specifically stated in the Complaint.

2

*Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Allegations which are legal conclusions, bare assertions, or merely conclusory are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679.

Second, the court must consider the factual allegations to "determine if they plausibly suggest entitlement to relief." *Id.* at 681. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. Plaintiff's Constitutional Claims

In the operative Complaint, Plaintiff asserts Denver Health violated his Fourth Amendment and Fourteenth Amendment rights pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). To defeat a motion to dismiss, Plaintiff must identify a specific policy or custom that caused his alleged injury. *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-404 (1997). Once a plaintiff has identified either a policy or custom properly attributable to the governmental entity, they must also show that these policies or customs amount to deliberate indifference to his or her constitutional rights, and that the policies or customs are the moving force that caused the constitutional violation. There must be a direct causal link between the governmental action and the deprivation of federal rights. *Brown*, 520 U.S. at 404; *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989). The unconstitutional harm is caused by such a policy if it results from decisions of a duly constituted legislative body or an office whose acts may fairly be said

3

to be those of the entity itself. *Marshall v. Columbia Lea Reg's Hosp.*, 345 F.3d 1157 (10th Cir. 2003). A custom or policy is not shown by alleging one unique incident where Plaintiff suffered a deprivation. Rather, a plaintiff must demonstrate a specific pattern or series of incidents that support the allegation of custom or policy. *Sekerak v. City and County of Denver*, 1 F.Supp.2d 1191, 1199 (D. Colo. 1998); *Butler v. City of Norman*, 992 F.2d 1053 (10th Cir. 1993).

Plaintiff has failed to plead these requisite elements in his Complaint. In order to hold a governmental entity liable in its official capacity, he must show "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). An entity can only be liable in its official capacity when a plaintiff establishes a predicate constitutional violation by an employee. *See Estate of Larsen ex. Rel Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008).

### A. Denver Health Did Not Have Any Custom, Policy, or Authority to Participate in DPD's Tactical Skills Training.

Plaintiff alleges that Denver Health jointly operated the tactical drills training with DPD "with deliberate indifference to the obvious likelihood of resulting serious injury and medical needs," and enforcing or tolerating a culture of completing the training "no matter what the cost." (D. 3 at ¶ 489). There is no factual basis for this false conclusory allegation.

Any alleged "partnership" between DPD and Denver Health was limited to DPD arranging for EMS to be on the scene of the employment training event. *Id.* at ¶ 52. "[T]he DAD program assures the recruits that a 'Sergeant pre-arranges for EMS to be on scene at least seven days prior to the event (prefer two ambulances).'" *Id.* There is no factual basis to conclude that Denver Health had any authority to promulgate rules or policies

4

surrounding the police department's tactical training. Indeed, Plaintiff concedes that the tactical training is promulgated by the Department of Public Safety and the Denver Police Department. *Id.* at ¶ 397. Plaintiff asserts that Denver Health has provided paramedics to the event in the past, but this assertion does not amount to a custom of constitutional violations. Plaintiff has not alleged any other occurrence of an unfortunate outcome for a cadet with SCT (sickle cell trait), nor any other cases which support a custom or policy leading to the infringement of constitutional rights. Rather, Plaintiff's claim is based on a singular, unique incident which does not meet the burden for constitutional relief.

The Tenth Circuit has specifically rejected § 1983 claims based on municipal custom or policy where the plaintiff has not alleged the existence of similar discrimination as to others. "To prevail on this basis, [plaintiff] must show that there exists a persistent and widespread practice so permanent and well settled as to constitute a custom or usage with the force of law. A custom or policy is not established merely by alleging one unique incident in which the plaintiff suffered a deprivation; instead, the plaintiff must demonstrate a specific pattern or series of incidents that support the general allegation of a custom or policy." *Sekerak*, 1 F.Supp. 2d at 1199; *see also Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (dismissing municipal liability claim where plaintiff's failure to allege existence of similar incidents "seriously undermines her claim").

Plaintiff's attempt to impose liability on Denver Health based on a single incident also fails because there is no allegation of a policy attributable to a municipal policymaker. "[W]here a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity

5

being sued." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Plaintiff fails to state any such allegation; his Complaint identifies neither a decision nor a municipal policymaker to whom the alleged constitutional violation can be attributed. Under such circumstances, Plaintiff's claim should be dismissed. *see Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (in case where plaintiffs sought to hold a city liable under § 1983 based on a single incident, court held that plaintiffs did not state a claim in part because they did not allege that the incident in question occurred pursuant to a decision by a city policymaker).

### B. Denver Health Never Improperly Trained Paramedics Nor Acted With Deliberate Indifference to Plaintiff's Federal Rights.

Any purported deliberate indifference or failure to train and supervise claim against Denver Health should be dismissed. Plaintiff alleges that Denver Health was "deliberately indifferent in failing to adopt obviously needed regulations or procedures for Fight Day for recruits with SCT." (D. 3 at ¶¶ 405, 492). He further asserts that SCT was a foreseeable and recurring issue. *Id.* at ¶ 491. As stated above, Plaintiff has not alleged any other instances of cadets having complications from SCT. Plaintiff fails to allege facts that plausibly show that Denver Health's provision of paramedics or failure to implement certain policies or training amounted to deliberate indifference of *foreseeable* constitutional violations. To the extent Plaintiff alleges he did not receive adequate medical care, this does not constitute a deprivation of his federal rights. *See Perkins v.*

6

*Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (holding that the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation"). Plaintiff has failed to allege how not having specific procedures for cadets with SCT violated his constitutional rights.

Moreover, as argued in detail in Wham and Sung's Motion To Dismiss, Plaintiff has not established that his constitutional rights were violated by Denver Health employees. Plaintiff does not claim the Denver Health paramedics personally participated in the alleged constitutional violation, nor that any of their conduct caused his injuries. Plaintiff thus fails to state a viable claim against Denver Health for the alleged actions of its employees, including any failure to properly train them. Accordingly, Plaintiff's constitutional claims must be dismissed.

## II.     State Claims - Negligence in the Operation of Public Hospital

### A. Denver Health Did Not Deviate from State and National Standards With Respect to Training Specific to Sickle Cell Trait.

Plaintiff asserts that Denver Health improperly trained and supervised its paramedics, specifically alleging they did not adequately train its paramedics regarding SCT. (D. 3 at ¶ 459). Paramedic training and certification is determined by the State of Colorado, *see* 6 CCR 1015-3 (2024), and the National Registry of Emergency Medical Technicians is the certifying body for EMS personnel. Plaintiff does not claim there were any deviations from these rules, standards, or licensure by Denver Health. Plaintiff does not, and cannot, assert that Denver Health conducts the corporate practice of medicine. To the extent that Plaintiff is implying that Denver Health should have known there would be specific complications of patients with SCT at the DPD tactical training and provided specific SCT training to its paramedics, his claim for negligence still fails. Plaintiff did not

7

allege any facts that Denver Heath paramedics have encountered patients experiencing complications from SCT in in similar training exercises in the past, or that different protocols would have produced a different outcome. Plaintiff has not pled any facts which plausibly indicate that if Wham and Sung had forced him to quit training that he would have had a different outcome. Even with the benefit of hindsight, it cannot be said that Plaintiff's injuries resulted from deficiencies in the paramedics' training.

Plaintiff's claims of negligent training and supervision also fail because he fails to allege that Denver Health knew or should have known the paramedics presented a danger to Plaintiff. Colorado recognizes such claims only when an employer has preexisting knowledge its employee presents a danger to others. No evidence of such knowledge exists here nor is alleged. There is no evidence that the paramedics had a dangerous propensity or were likely to harm others. Without such evidence, Plaintiff's negligent supervision claim fails as a matter of law.

An employer may negligently supervise an employee when it has reason to know that the employee "because of his qualities, is likely to harm others in view of the work or instrumentalities entrusted to him." *Destefano v. Grabrian*, 763 P.2d 275, 287 (Colo. 1988). Liability results "not because of the relation of the parties, but because the employer <u>antecedently had reason to believe that an undue risk of harm would exist because of the employment</u>." *Id.* (emphasis added). A plaintiff must establish the "same basic elements" for a negligent training claim as a negligent supervision claim, including evidence "the employer knows or should have known that the employee would cause harm." *Westin Operator, LLC v. Groh*, 347 P.3d 606, 612 (Colo. 2015). Absent such allegations, Plaintiff's negligent training claim cannot stand.

### B. Denver Health Had No Duty to Provide Specific Training for DPD's Tactical Skills Training

Plaintiff alleges Denver Health had an obligation to train paramedics to interfere with DPD's tactical training without providing any authority for such an obligation. (D. 3 at ¶ 459(a)). Denver Health had no duty to provide specific training for the DPD's employment event. Denver Health was not involved in the promulgation of the DPD training regimen. *Id.* at ¶ 397. Plaintiff states no plausible facts that the Denver Health paramedics were authorized to participate in the DSD employment training or that they did. Rather, the paramedics were present to provide emergency treatment if needed. While grouping Denver Health and the paramedics in this circumstance with the DPD, Plaintiff is attempting to allege that the hospital and paramedical staff had participated in drills that "deliver[ed] repeated punches, kicks, and knee strikes", where "staff members attack the recruit with 2 by 2 foot padded bags, simulating an attack by more than one assaultive subject" and conduct "ground fighting…to have the recruit fight through fear to continue to protect themselves." *Id.* at ¶¶ 44-47. Plaintiff cannot plausibly claim that Denver Health or its staff promulgated these drills or perpetuated the Defensive Action Drills of the DPD.

### C. Denver Health Was Not Negligent in Failure to Disclose Recruits' Medical Histories

Plaintiff further alleges that Denver Health was negligent by not requiring paramedics to be provided advanced notice of disclosed medical facts relevant to the police recruits. (D. 3 at ¶ 459(b)). These allegations are a red herring. Plaintiff did not plead any facts indicating that Denver Health retained possession of the Medical History Forms which are DPD employment records in its possession. Moreover, it would be

absurd for paramedics to be required to know in advance any and all potential health issues of the hundreds of people they may come in contact with on any given day, or at this DPD event *specifically*. In practice, a reasonable paramedic would communicate with a conscious patient regarding any pre-existing medical conditions which would affect treatment, which is exactly what happened in this case. Plaintiff verbally communicated to the paramedics that he had SCT. *Id.* at ¶ 81. Therefore, even if there were a duty for Denver Health to provide medical dossiers of every recruit to the paramedics dispatched, it is of no consequence in this case because Plaintiff personally communicated the information to the paramedics. Going one step further, Plaintiff seemingly alleges that the paramedics should have forced Plaintiff to quit when they learned that he had SCT. This is not a burden or duty that can be or has been plausibly stated. Denver Health's alleged failure to provide Plaintiff's pre-existing medical conditions to paramedics Wham and Sung did not proximately cause his injuries.

## CONCLUSION

For the reasons stated herein, Defendant Denver Health and Hospital Authority, requests this Honorable Court to dismiss all claims against it, with prejudice.

DATED at Denver, Colorado this 21st day of October, 2024.

s/ Anthony E. Derwinski
Anthony E. Derwinski, Esq., Colo. Bar #44408
Michele Stark Carey, Esq., Colo. Bar #27225
Jeff C. Staudenmayer, Esq., Colo. Bar #42981
Ruegsegger Simons & Stern, LLC
1700 Lincoln Street, Suite 4500
Denver, Colorado 80203
Phone: 303.623.1131
E-mail: aderwinski@rs3legal.com
*Attorneys for Wham and Sung*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

                         s/ Anthony E. Derwinski