```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 22-cv-01191-CNS-NRN

 4

 5     PATRICK SOBECKE,

 6            Plaintiff,

 7            vs.

 8     MARK KOZLOWSKI, et al.,

 9            Defendants.

10    --------------------------------------------------------------
                         REPORTER'S TRANSCRIPT
11                          Oral Argument
      --------------------------------------------------------------
12
       Proceedings before the HONORABLE CHARLOTTE N. SWEENEY, Judge,
13      United States District Court for the District of Colorado,
       commencing on the 7th day of June, 2023, in Courtroom A702,
14            United States Courthouse, Denver, Colorado.

15                            APPEARANCES

16    For the Plaintiff:
      JULIA T. THOMPSON and EMILY O. MONNETT, Leventhal Puga Braley
17    PC, 950 South Cherry St., Ste. 600, Denver, CO 80246
      For Defendant Kozlowski:
18    ANGELA L. KLEIN, Klein Cook Olson LLC, 2130 Resort Dr., Unit
      E, Steamboat Springs, CO 80111
19    For Defendant Smith:
      JARED R. ELLIS, Hall & Evans LLC, 1001 Seventeenth St., Ste.
20    300, Denver, CO 80202
      For Defendants Beard and HCA-HealthONE LLC:
21    STEPHANIE L. CLARK, Sharuzi Law Group, Ltd., 518 17th St.,
      Ste. 270, Denver, CO 80202
22    For Defendants Quintana, Ludtke, and Denver Health and
      Hospital Authority:
23    SCOTT S. NIXON and RODRIGO LUGO, Hall Booth Smith PC, 5445 DTC
      Parkway, Ste. 900, Greenwood Village, CO 80111
24

25        Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
                    Denver, CO 80294, 303-335-2108
              Proceedings reported by mechanical stenography;
                  transcription produced via computer.
```

22-cv-01191-CNS-NRN     Oral Argument        06/07/2023     2

1              *         *         *         *         *

2       (The proceedings commenced at 10:00 a.m.)

3              THE COURT:  We are here for a motions hearing in

4    22-cv-1191, Sobecke -- am I saying that correctly?

5              MS. THOMPSON:  You are, Your Honor.

6              THE COURT:  Sobecke v. Kozlowski, et al.  May I have

7    entries of appearance, please?

8              MS. THOMPSON:  Good morning, Your Honor.  Julia

9    Thompson on behalf of the plaintiff Patrick Sobecke.

10             MS. MONNETT:  Good morning.  Emily Monnett on behalf

11   of plaintiff Patrick Sobecke.

12             THE COURT:  Good morning.

13             MS. KLEIN:  Angela Klein on behalf of defendant Mark

14   Kozlowski.

15             MR. NIXON:  Good morning, Your Honor.  Scott Nixon

16   and Rodrigo Lugo on behalf of Denver Health, Ms. Quintana, and

17   Mr. Ludtke.

18             THE COURT:  Okay.

19             MS. CLARK:  Good morning, Your Honor.  Stephanie

20   Clark on behalf of Swedish Medical Center and Nurse Beard.

21             THE COURT:  All right.

22             MR. ELLIS:  Good morning, Your Honor.  Jared Ellis on

23   behalf of defendant Wade Smith.

24             THE COURT:  Thank you all for coming.  I'd like to

25   take brief oral argument.  I don't need -- let me just advise

                        Sarah K. Mitchell, RPR, CRR

22-cv-01191-CNS-NRN      Oral Argument          06/07/2023    3

1   you I don't need much nor want much argument on the motion to

2   dismiss the sixth claim for relief, so if you can focus on

3   defendants' motion to dismiss basically the Colorado immunity

4   act issue.  So we will hear from defendant first because it's

5   their motion.  And, again, this is defendants' motion to

6   dismiss pursuant to F.R.C.P. 12(b)(1), ECF 50.  Ideally we'll

7   limit you to 15, but if you go over or under, that's okay.

8         MR. LUGO:  Thank you, Your Honor.  Good morning, Your

9   Honor.  Again, my name is Rodrigo Lugo, and I'm appearing on

10  behalf of the Denver Health and Hospital Authority doing

11  business as the Denver Health Paramedics Division and its two

12  EMTs named as defendants in this case, EMT Cassidy Quintana

13  and EMT Matthew Ludtke.

14        Now, the question before the Court is

15  straightforward.  Is the paramedic division entitled to the

16  protections of the Colorado Governmental Immunity Act or does

17  the division fall within the immunity waiver for the operation

18  of a public hospital.  Colorado has abrogated the common law

19  doctrine of sovereign immunity, and so the question is only a

20  matter of interpretation of the Colorado Governmental Immunity

21  Act.  The issue of sovereign immunity is exclusively a

22  legislative prerogative, and thus the Court's role is to

23  interpret the statutory text giving effect to its plain

24  language and meaning.

25        The statutory language makes clear that the paramedic

Sarah K. Mitchell, RPR, CRR

Case No. 22-cv-01191-CNS-NRN Document 88 Filed 06/09/23 USDC Colorado pg 4 of 41
pg 4 of 41

1   division is not part of the operation of a public hospital,

2   and thus it is entitled to full CGIA immunity.  The relevant

3   provisions of the CGIA are Sections 106, 108, and 118.

4   Sections 108 and 118 state that both public entities and

5   public employees are entitled to immunity from suits for

6   actions that lie in tort, and Section 106 defines some

7   exceptions to this grant of immunity.  As relevant here,

8   Section 106(1)(b) states that sovereign immunity is waived by

9   a public entity in an action for injuries resulting from the

10  operation of any public hospital.

11          Now, there's no doubt that the Denver Health and

12  Hospital Authority is a public entity that is subject to the

13  provisions of the CGIA.  The authority was created by statute

14  as a political subdivision of the State of Colorado.  It owns

15  and operates close to 30 health facilities, including multiple

16  family health centers, school-based health centers, primary

17  care clinics, urgent care clinics, pharmacies, a poison

18  clinic, a domestic violence center, and a paramedic division.

19  Out of all of the facilities that the authority operates,

20  however, only one, the Denver Health hospital, is a hospital.

21          The hospital surely falls within the public hospital

22  exception, but the paramedic division is a separate entity,

23  and the question before the Court is whether the public

24  hospital exception applies to the paramedic division.  In

25  construing the language of the statute, the Court's aim is to

1   give effect to the legislature's intent and give consistent,

2   harmonious, and sensible effect to the statute construing

3   words and phrases in accordance with their plain and ordinary

4   meanings and according to the rules of common usage.  The

5   Court should presume that the legislature does not use

6   language idly, but understands the meaning of the words it

7   uses and intends that such meaning should be applied.  If the

8   statutory language is clear and unambiguous, the Court need

9   not resort to other rules of statutory construction.

10          Here the phrase operation of a public hospital is

11  clear and unambiguous, and by its plain terms does not include

12  paramedic or emergency medical services.  The state Supreme

13  Court has already defined the term hospital as used in

14  Section 106(1)(b).  In the case of *State v. Hartsough*, the

15  Court determined that a veterinary hospital was not a public

16  hospital, and in doing so emphasized that the legislature's

17  intent was to limit the term hospital to institutions that

18  provide care for sick and injured persons.  The Court in

19  *Hartsough* also recognized that Section 106(1)(b) grouped the

20  term hospital together with terms such as correctional

21  facilities and jails.  The Court indicated that this strongly

22  suggests that this section was intended to apply to public

23  facilities designed to hold people.

24          It's also important to note that the legislature used

25  the narrow term hospital instead of a broader term such as

1    healthcare facility or medical provider.  In other statutes

2    the legislature has made that distinction between healthcare

3    facilities, hospitals, clinics, nursing homes, health centers,

4    and acute treatment units.  Here the legislature chose the

5    narrow term hospital.  This was pointed out in the case of

6    *Plummer vs. Little* where the Court of Appeals held that an

7    outpatient clinic was not a public hospital.  The Court in

8    *Plummer* emphasized that the use of the term hospital without

9    listing other types of facilities suggests the waiver of

10   immunity for operations of a public hospital was intended to

11   be limited.  Accordingly, the *Plummer* Court decided to limit

12   the waiver to facilities that provide only specific hospital

13   services and generally relating to inpatient care.  As the

14   Court held, other facilities that do not provide inpatient

15   care do not fall within the waiver.

16        I'd like to bring the Court's attention to

17   Section 106(5), the same section that we're talking about,

18   where the Court references the University of Colorado Hospital

19   Authority and makes a distinction between the authority and

20   its hospital components using terms such as clinic, surgery

21   center, and department.  The use of these different terms is

22   evidence that the legislature knows how to reference other

23   types of healthcare centers or medical providers when it wants

24   to, yet in this case it chose to use the term hospital.

25        I'd also like to bring the Court's attention to the

 1   case of *Montoya vs. Trinidad State Nursing Home* where the

 2   Court held that a nursing home was not a public hospital.  In

 3   doing so the Court emphasized multiple factors such as the

 4   fact that hospitals and nursing homes have separate statutory

 5   and regulatory schemes.  Hospitals are required to have

 6   physicians on staff.  Hospitals provide diagnostic,

 7   anesthesia, laboratory, emergency, and radiological services,

 8   and the fact that a nursing home is not licensed as a

 9   hospital.  All of these same factors support the finding that

10   the paramedic division is not a hospital.

11          It is also governed by a separate statutory and

12   regulatory scheme.  It does not provide inpatient services.

13   It does not have physicians on staff, and it does not provide

14   all the other services that a hospital does such as

15   diagnostic, imaging and radiology, laboratory analysis,

16   surgery, and so on.

17          Most significantly, the division is not licensed as a

18   hospital.  While the Denver Health hospital has its own

19   hospital license issued by the CDPHE, the paramedic division

20   does not operate under the hospital's license.  Instead, it is

21   separately licensed as an EMS provider in the counties in

22   which it operates.  In the reply brief in support of our

23   motion at Exhibit D we attached the Denver and Arapahoe County

24   licenses for the paramedic division which indicate that the

25   division is licensed to operate as an ambulance service and as

1    an emergency medical vehicle company, not as a hospital.

2            I'd also like to point out that the CGIA and the

3    immunity waiver in Section 106(1)(b) were enacted in 1971.

4    Subsection (5) was added in 2020.  The statute has been

5    amended numerous times and the legislature has had multiple

6    opportunities to amend the public hospital exception and

7    address the narrow interpretations of *Plummer*, *Hartsough*, and

8    *Montoya* to make the exception broader and apply to other forms

9    of medical providers.  The legislature has chosen not to do so

10   indicating its agreement with the narrow interpretation

11   provided by the other Courts.

12           Now, plaintiff tries to evade the plain language of

13   the statute by suggesting that even if the paramedic division

14   is not itself a hospital, it is inextricably tied to the

15   operation of a hospital and specifically the Denver Health

16   hospital.  The statute does define the term operation.  In

17   Section 103(3)(a) it defines operation as the act or omission

18   of a public entity or public employee in the exercise and

19   performance of the powers, duties, and functions vested in

20   them by law with respect to the purposes of any public

21   hospital.

22           However, Courts have narrowed the scope of the term

23   operation.  In the case of *Pack v. Arkansas Valley*

24   *Correctional Facility*, the Court held that CGIA immunity is

25   waived only when the incident or behavior at issue relates to

1   the facility's purpose and does not encompass services and

2   functions which are ancillary to that purpose.  This

3   distinction between ancillary services and primary services

4   was reiterated by the Court in the case of *Daley v. University*

5   *of Colorado Health Sciences Center* which recognized that the

6   primary purpose of a hospital is to provide medical or

7   surgical care to sick or injured persons.

8          However, as the *Plummer*, *Hartsough*, and *Montoya* cases

9   recognized, this definition of operation is not so broad as to

10  encompass the provision of any type of medical care.  Instead,

11  it is reserved for those institutions that are licensed as

12  hospitals, provide hospital services, and typically provide

13  inpatient care.  In contrast, the primary purpose of the

14  paramedic division is not to provide medical or surgical care

15  and especially not on inpatient status.  Instead, the

16  division's purpose is to patrol the streets of the Denver

17  metropolitan area, respond to 911 calls for EMS services,

18  provide limited emergency care on the scene, and, if needed,

19  transport the patient to the hospital.

20         In many circumstances, however, the patient is

21  evaluated and treated at the scene, and they are never

22  transferred to the hospital.  Such is the case here in this

23  case where Mr. Sobecke received care at his home, and he was

24  not transferred to the hospital.

25         Plaintiff tries to broaden the meaning of the term

                    Sarah K. Mitchell, RPR, CRR

CaSeNd1o224vc0123536GSPNRTPOoDocumee8t 48id 066094/7112/1&5&C CoBDadColpga10 of
pg 101 of 41

1   operation by citing to the case of *Sereff v. Waldman*, and

2   specifically to language where the Court suggested that

3   immunity is waived so long as the service at issue, quote,

4   furthers the purposes of the hospital.  However, *Sereff*'s

5   holding must be considered in the context of the entire case

6   and the specific factual circumstances before the Court.

7   *Sereff* involved a patient who was treated by Dr. Waldman who

8   was a resident in training enrolled in Denver Health

9   hospital's residency program.  The other defendant was

10  Dr. Waldman's supervisor Dr. Steedle who also held a faculty

11  appointment with the Denver Health hospital's residency

12  program.

13          Furthermore, the hospital where the care was

14  provided, Swedish Medical Center, had also entered into an

15  affiliation agreement with the Denver Health hospital for

16  sharing and training of residents through the Denver Health

17  hospital residency program.  These three facts are key to

18  *Sereff*'s holding.  The facts are that the defendants were both

19  physicians.  They were providing treatment in a hospital, and

20  the defendants and the private hospital were all affiliated

21  with Denver Health hospital through the residency program.

22          Under those circumstances, the *Sereff* Court held that

23  the fact that treatment was provided at another private

24  hospital participating in the residency program was irrelevant

25  because the care was still tied to the operations of the

Sarah K. Mitchell, RPR, CRR

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 11 of
pg 11 of 41

1  Denver Health hospital.  In contrast, in this case the care

2  was not provided by physicians, but instead by EMS providers.

3  More significantly, the care was not provided at a hospital,

4  but at Mr. Sobecke's home.  Thus, the specific factual

5  circumstances that led the *Sereff* Court to find the CGIA

6  immunity was waived do not apply here.

7        Plaintiff has also argued that the paramedic division

8  provides a form of prehospital service.  This pre-service

9  argument has already been rejected by other Courts.  In the

10  case of *Howard Through Young vs. the City and County of Denver*

11  the plaintiff attempted to argue that a sheriff department's

12  pretrial services of investigating an inmate's criminal

13  history and making a bond recommendation were tied to the

14  operations of a jail.  The Court held that those pre-detention

15  services do not constitute operation of a jail.

16        For the same reason, the paramedic division services

17  of patrolling the city, responding to emergency calls,

18  providing emergency care, and transporting patients to

19  hospitals cannot be considered operations of a public

20  hospital.  Instead, these are ancillary services of the kind

21  which *Pack* and *Plummer* held do not waive immunity.

22        Turning to my final argument, I'd like to address

23  plaintiff's claim that there's a relationship between the

24  paramedic division and the Denver Health hospital.  Plaintiff

25  conflates the Denver Health hospital with the Denver Health

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/09/23   USDC Colorado   pg 12 of 41
pg 12 of 41

1   and Hospital Authority.  The paramedic division and the Denver

2   Health hospital are separate entities, but they are both under

3   the umbrella of the Authority.  For that reason they do share

4   funding, they share a corporate structure, they are located in

5   close proximity, and they have individuals who work for both

6   the division and the hospital.

7         However, the same is true of the multiple other

8   locations that the Authority operates such as the school

9   centers, the urgent care centers, and the poison center.

10   Nevertheless, one would not argue that those facilities are

11   part of the operation of a public hospital.  Moreover, when

12   one looks at the broader picture, it is clear that the

13   division and the hospital are not as intertwined as plaintiff

14   suggests.  Only 30 to 39 percent of the individuals who are

15   picked up by the division are taken to Denver Health hospital.

16   The other 60 to 70 percent, which is the majority, are taken

17   to one of the other 11 private hospitals in the Denver Metro

18   area.

19         Similarly, not all of the patients brought to Denver

20   Health by ambulance are brought in by the paramedic division.

21   A number of them are brought in by other private ambulance

22   services.  Thus the relationship between the paramedic

23   division and the Denver Health hospital is not as exclusive as

24   plaintiff suggests.  Additionally, the division does not

25   operate out of the hospital.  The 911 call center is operated

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 13 of 41
pg 13 of 41

1   and run by the city of Denver.  Finally, the division has a

2   number of services that are not tied to hospital services in

3   any way, which includes providing care at Denver International

4   Airport, engaging in wildfire support, and providing medical

5   care at community events across the city.

6          Thus, in looking at the broader picture, it's clear

7   that the relationship between the division and the hospital is

8   only because they are both under the umbrella of the

9   authority, but in looking at how the division actually

10  operates and its relationship with the city of Denver and the

11  multiple private hospitals located within the city, it's clear

12  that although the division is involved in getting patients to

13  a hospital, its services do not consist of the operation of a

14  hospital and much less of linking it to the Denver Health

15  hospital exclusively.

16         Thus, upon review of the statutory provisions,

17  guidance from case law, and the factual record, the Court

18  should find that the paramedic division does not fall within

19  the waiver of immunity for operations of a public hospital,

20  that the division is entitled to full CGIA immunity, and that

21  plaintiff's complaint against the division and its employees,

22  EMT Quintana and Ludtke, should be dismissed.

23         Thank you, Your Honor.  Does the Court have any

24  questions?

25         THE COURT:  Not at this time, Mr. Lugo.  I'll let you

Case No. 1:22-cv-01355-GPG-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 14 of 41
pg 141 of 41

1    respond after the plaintiff's argument though.

2             MR. LUGO:  Thank you, Your Honor.

3             MS. MONNETT:  Good morning, Your Honor.  This is

4    Emily Monnett on behalf of plaintiff Patrick Sobecke.  The

5    important backdrop to consider in this case is that grant of

6    immunity under the Colorado Governmental Immunity Act must be

7    strictly construed while the waiver provisions of the Colorado

8    Governmental Immunity Act are supposed to be interpreted

9    broadly, and that's the critical backdrop in analyzing

10   plaintiff's motion -- or defendants' motion to dismiss, as

11   well as plaintiff's response.

12            Now, as you heard from the DHHA defendants, at issue

13   in this case is the public hospital exemption, or waiver as

14   you would say in the Colorado Governmental Immunity Act.  And

15   it's important to consider the actual text of the statute

16   which does specifically discuss claims -- does specifically

17   discuss injuries resulting from the operation of a public

18   hospital, and that's C.R.S. 24-10-106.  The statute doesn't

19   say it's claims arising at a public hospital or claims arising

20   -- or injuries that are committed by agents or employees of a

21   public hospital.

22            The statute is very clear in its use of the word

23   operation of a public hospital.  Operation of a public

24   hospital is defined in C.R.S. 24-10-103.  It states that,

25   quote, in the -- operation is defined as an act or omission,

                        Sarah K. Mitchell, RPR, CRR

Case No. 1:22-cv-01191-CNS-NRN Document 48 Filed 07/09/23 USDC Colorado pg 15 of 41
pg 15 of 41

 1     quote, in the exercise and performance of the powers, duties,

 2     and functions vested in them in law with respect to the

 3     purposes of any public hospital.

 4          So plaintiff isn't asking the Court to broadly

 5     interpret the statute or to go beyond what is actually

 6     required in looking at whether or not the Denver Health

 7     Paramedics Division furthers the purpose of the public

 8     hospital or is related to that purpose of the public hospital.

 9     Instead, plaintiffs are asking the Court to follow the

10     statutory scheme which specifically states that the Court

11     should be looking at the purposes of the public hospital and

12     whether the injuries arise as a result of something that has

13     to do with the purposes of a public hospital.

14          And *Sereff* isn't an outlier in looking at this as the

15     defendants claim in their reply brief and in their argument.

16     Instead, this view that you should be looking at whether or

17     not it's related to the purposes of the entity is demonstrated

18     in the case law the defendants cite in support of their

19     argument.  For example, *Pack* states that immunity is waived

20     if, quote, the activity at issue relates to the facility's

21     purpose.  Similarly *Richland Development Co.* addressed whether

22     records keeping duties of a sanitation district were related

23     to the purpose of that facility, and the Court in *Richland*

24     *Development Company* said that sovereign immunity is waived if

25     the act or omission relates to the purpose of the facility.

Case No. 1:22-cv-01191-CNS-NRN Document 48 filed 06/09/23 USDC Colorado pg 16 of
pg 16 of 41

1         And so the *Pack* case concerned a fall outside of --

2    in the visitor parking lot of a correctional facility, and the

3    *Richland Development* case concerned recordkeeping function of

4    a sanitation district, whereas the sanitation district

5    incorrectly stated the number of taps available in a facility

6    and then the purchaser was sued once they bought the property

7    and realized the amount of taps were different.

8         And so the Court in those cases was specifically

9    looking at the purpose of the facility and the purpose as

10   proscribed by law, which is what the Court should be doing

11   here.  And in those cases they found that those specific

12   functions were related to the operation of the facility

13   similar to, you know, having a parking lot is related to the

14   operation of Walmart, but it's not necessarily related to the

15   purpose of Walmart.  And here the Denver Health Paramedic

16   Division is related to the purpose of a public hospital, which

17   is to provide medical care to sick and injured persons, which

18   is exactly what the paramedic division does as well.

19        And I stated one of the important backdrops in this

20   case was to look at the broad interpretation of waivers and

21   the narrow interpretation of the grant of immunity.  Another

22   important backdrop in this case is there are sort of two

23   different lines of cases, which some of the defendants cited

24   in their briefs and in their argument.  One line of cases is

25   the *Montoya* case and the *Plummer* case where they were

Case No. 1:22-cv-01191-CNS-NRN Document 88 Filed 06/04/25 USDC Colorado pg 17 of 41
pg 17 of 41

 1   specifically looking at whether or not the entity itself was,

 2   you know, the type of entity that was involved.  They were

 3   specifically looking at whether or not the nursing home or the

 4   community clinics were actually public hospitals.

 5          There's a separate line of cases which is what the

 6   Court should be looking at here, the cases like *Craven* and

 7   *Daley* and *Sereff* and *Pack* and *Richland* where they were

 8   actually looking at whether the function at issue furthers the

 9   purpose or is related to the purpose of a public hospital.

10   And as I've stated, the Denver Health Paramedics Division is

11   specifically related to the purpose of Denver Health Medical

12   Center.  It furthers that purpose by transporting patients to

13   Denver Health Medical Center, ensuring that they get the

14   appropriate medical care that they need to actually be

15   delivered to the hospital, to make it there safely, to make it

16   there so that they can get medical care, and that's sort of

17   different than some of the other functions that we've talked

18   about in some of the other cases.

19          The Court should really be guided by *Sereff* in this

20   case.  *Sereff* is the most analogous case.  Contrary to

21   defendants' point in their reply brief, the Tenth Circuit

22   explained in *Craven* that Colorado Court of Appeals decisions

23   should provide evidence as to how the Colorado Supreme Court

24   would act on the issue and should be guiding federal courts in

25   determining these issues, and the Court should really look at

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 18 of 41
pg 181 of 41

1    it as the most analogous situation compared to some of the

2    other cases cited by defendants.  Because in *Sereff* at issue

3    was medical care.  Here, we're also dealing with a case where

4    medical care was provided.  And the Court determined that the

5    location of the medical care at issue was irrelevant, and

6    that's exactly what the Court should find here as well,

7    because Denver Health Medical Center -- or sorry -- the Denver

8    Health Paramedic Division actually furthers the purpose of the

9    public hospital.

10         And defendants state in their brief that *Sereff* is an

11   outlier, that it's been disagreed with by other cases, but the

12   *Daley* case that they cite in support of that isn't saying that

13   it disagrees with the *Sereff* case.  Rather, that cf. citation

14   appears in a string of citations along with cases like the

15   *Richland Development* case, the *Pack* case where the Court is

16   saying in that citation these are the instances where the

17   Court found that it was not related to the operation, cf.

18   *Sereff* where the Court found that it was related to the

19   operation of the public facility.

20         Similarly, the Awad or *Awad vs. Breeze* case also does

21   not disagree with the reasoning in *Sereff*.  The Court actually

22   -- that was a case similar to *Craven* and *Daley* that concerned

23   personnel issues.  The Court ultimately decided that the

24   personnel issues -- the claims related to personnel issues and

25   interpersonal conflicts was not related to the purpose of the

Case No. 1:22-cv-01353-NRN   Document 48   Filed 06/09/23   USDC Colorado   pg 19 of 41
pg 19 of 41

 1   public hospital, but in that same case the Court found that

 2   the issues concerning documentation in the medical records was

 3   subject to the Colorado Governmental Immunity Act public

 4   hospital exemption or waiver and that those claims could

 5   actually go forward.

 6          And the Court should disregard any distinction

 7   between EMTs and physicians that defendants mentioned as to

 8   why the Court should disregard the *Sereff* case.  There are a

 9   variety of different types of medical personnel that provide

10   medical care, and the statute doesn't make a distinction

11   between those specific kinds of personnel.  You know, we

12   wouldn't have a different argument if there were nurses

13   providing medical care.  That would still be part of the

14   public hospital exemption.  So the distinction between

15   physicians providing medical care in *Sereff* and EMTs providing

16   medical care in this case, you know, that's not a distinction

17   that the Court should consider.

18          In terms of the *Howard Through Young* case that

19   defendants cited as a reason why we should disregard sort of

20   prehospital services versus pretrial services, that case is

21   factually distinct.  Here -- in that case the Court of Appeals

22   determined -- so some of the factual -- sorry, to back up --

23   in the factual background of that case, a man had been

24   arrested several times for assaulting his wife.  On one of the

25   occasions that he was arrested the sheriff's department did

Case No. 1:22-cv-01035-CNS-NRN   Document 44   Filed 06/07/23   USDC Colorado   pg 20 of pg 201 of 41

1    not provide information about outstanding charges to the judge

2    when he or she or they were making the determination on bond,

3    and he was able to get out on bond, and he murdered his wife

4    during when he was out on bond.

5         And the Court of Appeals actually decided that those

6    were pretrial services dealing with the court system, which is

7    distinct from pre-jail services that the sheriff's department

8    -- or jail services that the department may provide.  This

9    case is distinct in that we're looking at prehospital services

10   which are inextricably linked with hospital services.  You

11   can't have prehospital services without actually having the

12   hospital services.  And the *Howard Through Young* case was

13   recently distinguished in the Colorado Court of Appeals in a

14   different bond case this past September.

15        Furthermore, plaintiff disagrees that the plain

16   language of the statute follows their interpretation and that

17   the plain language of the statute the Court should consider

18   the purposes of the operations of the purposes of the public

19   hospital.  This is distinct and different from the veterinary

20   hospital at issue in *Hartsough*.  I think we can agree that

21   veterinary services provided to animals are different than

22   medical services provided to humans which is at issue in this

23   case and what is tied between the paramedic division and

24   Denver Health hospital.

25        Again, defendant stated the Denver Health Paramedics

Case No. 1:22-cv-01035-CNS-NRN Document 88 filed 06/09/23 USDC Colorado pg 21 of
pg 241 of 41

1   Division and Denver Health hospital were separate entities and

2   that precludes a finding that Denver Health Paramedics

3   Division is related to the operation of the public hospital,

4   and I don't think that that's supported by the statute or law.

5   As long as the entity at issue is related to the operation of

6   a public hospital, it is part of that waiver.

7          And the Court in *Plummer* and *Montoya* mentioned that

8   there was no affiliation with a public hospital, and that was

9   one of the reasons they reached the conclusion that the

10  nursing home and the community clinic were not public

11  hospitals, and here we do have an affiliation with a public

12  hospital as much as defendants would like to deny that there's

13  an affiliation.  As they stated, 30 to 39 percent of their

14  patients are actually transferred to Denver Health.  There are

15  11 area hospitals, which means that they are taking a

16  disproportionate number of their patients to Denver Health.

17         It's also critical to recognize that Denver Health

18  Paramedics Division is actually overseen by ER physicians in

19  Denver Health Medical Center.  If they have a question from

20  the field about what to do with a patient, if it is mandatory

21  that they contact a physician based on certain policies and

22  protocols, then they actually contact a physician at Denver

23  Health Medical Center from the emergency room and either ask

24  them what to do or run through the policies that were dictated

25  by Denver Health Hospital Authority and the Denver Health ER

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 22 of 41
pg 22 of 41

1    physicians that actually create the policies and protocols

2    that Denver Health Paramedics Division actually follows.

3             Given this inextricable link between the Denver

4    Health Paramedics Division and the Denver Health Hospital

5    Authority and the role that Denver Health Paramedics Division

6    has in furthering the purpose of the public hospital by

7    providing emergency medical care, by transferring patients to

8    that facility at a disproportional number, the Court should

9    find that the Denver Health Paramedics Division is part of the

10   CGIA public hospital exemption and deny defendants' motion.

11        THE COURT:  Well, let me ask you about the

12   distinction apparently the defendants are trying to draw

13   between Denver Health and Hospital Authority and Denver Health

14   hospital.

15        MS. MONNETT:  Yes.  So they are -- Denver Health

16   Paramedics Division and Denver Health hospital are, in

17   plaintiff's view, and I think the Court will find based on

18   evidence that they are linked.  That Denver Health Paramedics

19   Division -- the fact that they are allegedly separate entities

20   does not preclude a finding that they're related, but the

21   Denver Health Paramedics Division actually furthers that

22   purpose.

23        THE COURT:  But in terms of the Denver Health

24   association piece of it, what's the link -- how are you

25   describing the link between the authority and the hospital?

Sarah K. Mitchell, RPR, CRR

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/09/23   USDC Colorado   pg 23 of 41
pg 23 of 41

1          MS. MONNETT:  The authority operates the hospital, as

2    well as it operates the paramedics division, but, again,

3    functions of the hospital actually are -- oversee the

4    operation of the paramedics division as well.  So it's not as

5    simple as, you know, there's Denver Health Hospital Authority

6    and then there's these two branches.  The medical directors

7    for the Denver Health Paramedics Division and the physicians

8    that oversee the paramedics division actually come from this

9    Denver Health Medical Center or Denver Health hospital entity.

10         THE COURT:  Okay.  Let me ask if it would -- let me

11   have you assume that the plaintiff was driven to a different

12   hospital, not Denver Health.  Would your argument be the same

13   in terms of DHA being on the hook or no?

14         MS. MONNETT:  Yes, that's correct, because as we've

15   said that they -- there is this inextricable link between them

16   even -- I think the *Sereff* case sort of addresses this by

17   saying the location of the negligence, you know, is

18   irrelevant.  In that case the negligence occurred at a private

19   hospital, but because there were residents who worked in

20   multiple area hospitals but part of the residency program for

21   Denver Health Hospital Authority or what was then Denver

22   General Hospital, that that residency program furthered the

23   purpose and so the location was irrelevant.

24         Similar here, Denver Health Paramedics Division,

25   regardless of what hospital it actually transports patients

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 24 of 41
pg 241 of 41

1    to, supports the operation of a public hospital, and the

2    statute doesn't say it needs to exclusively support or further

3    the purpose of a public hospital -- of just one public

4    hospital and only public hospitals.  The statute says

5    operation of a public hospital.

6            And here, regardless of whether they transported

7    plaintiff Patrick Sobecke to the hospital or to Denver Health

8    Medical Center or Swedish Medical Center, the same sort of

9    analysis applies because ultimately the paramedics division

10   supports the operation of the hospital by, you know,

11   transporting a disproportional number of the patients to the

12   hospital and providing emergency medical care to patients that

13   will be transported there.

14           Furthermore, if -- you know, we haven't started

15   discovery in this case except for on the limited issue of the

16   -- like, the limited issue of jurisdiction.  You know, there

17   could be an issue in this case -- if there was an issue with

18   Mr. Sobecke that the two EMTs needed to contact a physician

19   and ask questions, that physician would have been a physician

20   from Denver Health, and so in that way, you know, Denver

21   Health also would still be on the hook.

22           THE COURT:  Okay.  I might bring you back up to

23   address a couple questions about the sixth claim for relief,

24   but let's finish this one first.

25           MS. MONNETT:  And Ms. Thompson was going to address

                        Sarah K. Mitchell, RPR, CRR

 1    the sixth claim.

 2            THE COURT:  Okay.

 3            MS. MONNETT:  But if you would like to bring me back

 4    up, I guess that's fine.

 5            MR. LUGO:  Your Honor, may I address a few points?

 6            THE COURT:  Yes.

 7            MR. LUGO:  Plaintiff's counsel began her argument by

 8    pointing out that the immunity must be strictly construed and

 9    the waiver must be interpreted broadly, and while that is an

10    accurate statement of the law, this broad interpretation

11    cannot change the plain meaning of the statutory language

12    which is where the Court's analysis starts and ends.  The

13    plain language says public hospital, and the paramedic

14    division is not a public hospital.

15            So then we turn to the operation part of it, and

16    plaintiffs would argue that operation is anything that

17    furthers the purpose of the hospital.  Now, if Mr. Sobecke had

18    had labs taken at one of the outpatient family center clinics

19    and as a result of those labs -- let's say, those labs had

20    been misinterpreted and then plaintiffs tried to sue that

21    family center clinic.  Surely the labs taken at that clinic

22    further the operation of the hospital, but that doesn't mean

23    that the clinic falls within the waiver for operation of a

24    public hospital.  If the standard is just that it furthers the

25    operation of it or it is related to the purposes of it, that

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/09/23   USDC Colorado   pg 26 of
pg 261 of 41

 1   standard is just too broad.  A line must be drawn somewhere.

 2          THE COURT:  Let me stop you there.  Most members of

 3   the public would consider their public hospital to offer some

 4   sort of paramedic service, whereas they may not consider their

 5   public hospital to offer labs and testing and that sort.

 6          MR. LUGO:  Well, I would point out, Your Honor, that

 7   many of the paramedic services that operate in Colorado are

 8   private services such as American Medical Response or the

 9   South Metro Fire Rescue; and, moreover, the majority don't

10   operate out of hospitals.  They operate out of fire

11   departments.  So there's nothing intrinsic to the operations

12   of a paramedic or an EMS provider that links it to a hospital.

13          I would also point out that in this case Mr. Sobecke

14   was not taken to a hospital.  That's the whole basis of the

15   claim here.  And so whether -- I mean, if he had been taken to

16   Denver Health or if he had been taken to one of the other 11

17   private hospitals in the Denver Metro area, that might be

18   different.  But here it wasn't a prehospital service because

19   he was never taken to the hospital.  There was a 911 call.

20   Providers showed up at his house.  He was evaluated at his

21   house, and they determined that no further care was needed at

22   that time.  So it's not like it was one step in leading up to

23   a hospital.  Many, many times EMS providers show up and they

24   don't end up taking the patient to a hospital, and because of

25   that, that can't be considered intrinsic to the operation of a

Case No. 1:22-cv-01035-GPG-NRN   Document 83-4   filed 06/09/23   USDC Colorado   pg 27 of 41
pg 241 of 41

 1   public hospital.

 2           THE COURT:  Does defendant dispute that physicians at

 3   Denver Health oversee the paramedics?

 4           MR. LUGO:  No, Your Honor.  But it's important to

 5   understand that the Denver Health Authority, which is this big

 6   sort of all encompassing political subdivision, has within it

 7   the paramedic division, the hospital, and all these other

 8   clinics, and it's not unusual to expect that they would share

 9   medical providers.  A provider might work at a family center

10   and might also work at the hospital at separate times, but

11   because they're all under the umbrella of the Authority, it's

12   only natural they would share some of those physicians.  And

13   so, yes, the paramedic division is supervised or overseen by

14   physicians who also happen to work at the hospital.

15           THE COURT:  Okay.  Anything further?

16           MR. LUGO:  Just a moment, Your Honor.  Briefly I want

17   to address *Sereff*, and I think it's important to emphasize,

18   first, that it's distinguishable, because, again, in that case

19   the care was provided at a hospital by physicians who were

20   directly affiliated with Denver Health hospital through the

21   residency program.  That's just not the case here.  These are

22   EMT providers who are not physicians, not providing care at

23   the hospital, not affiliated with the residency program.  So

24   *Sereff* is distinguishable, and, as was briefly addressed, it's

25   not binding.  It is persuasive to the Court.  To the extent

Case No. 1:22-cv-01191-CNS-NRN   Document 48   Filed 06/09/23   USDC Colorado   pg 28 of 41
pg 28 of 41

```
 1   that the Court feels it can distinguish it, it should, and --
 2   yeah, so *Sereff* should be distinguished.
 3             THE COURT:  Okay.  Thank you.  Let me bring --
 4   whoever on the plaintiff's side wants to talk about the sixth
 5   claim for relief, let me ask you a couple questions.
 6             MR. LUGO:  Thank you, Your Honor.
 7             THE COURT:  Thank you.
 8             MS. THOMPSON:  Thank you, Your Honor.  Julia Thompson
 9   on behalf of Patrick Sobecke on the sixth claim for relief.
10             THE COURT:  Let me just ask, because it's not going
11   to come as a surprise that I'm going to conclude that joint
12   and several liability is not a claim, that it's a theory of
13   liability.  Assuming I give you a chance to amend, what are
14   you going to do with that theory?  Is it going to attach to
15   another claim?  Are you going to add a claim?
16             MS. THOMPSON:  So it's an interesting way you phrased
17   that.  You're saying that you're finding it's not a claim.
18   You're finding -- I want to make sure I understand the Court's
19   question because --
20             THE COURT:  Well, I don't believe, and I'll cite the
21   authority in a minute, that joint and several liability is a
22   claim for relief, a separate claim for relief.  It's a theory
23   of liability that attaches to another claim for relief,
24   usually conspiracy, usually something involving multiple
25   parties.  And I'm wondering -- I don't read your other claims
```

Sarah K. Mitchell, RPR, CRR

Case No. 1:22-cv-01191-CNS-NRN   Document 48   Filed 06/09/23   USDC Colorado   pg 29 of 41
pg 29 of 41

1    to encompass that, so if given the chance to amend, are you

2    going to add an entirely separate claim or are you going to

3    pursue that theory of liability under claims one through five,

4    any of them?

5          MS. THOMPSON:  Right.  We would then pursue it under

6    those other claims that involve the parties Dr. Kozlowski,

7    Nurse Beard, Dr. Smith, and Swedish Medical Center.

8          THE COURT:  Okay.  And, Mr. Lugo, are you responding

9    to this claim or are you tag-teaming?

10         MR. LUGO:  I don't think we've joined in this motion.

11         MS. THOMPSON:  Denver Health isn't on this one.

12         THE COURT:  Well, I better give you a chance to say

13   something then.  I forgot it's a different defendant moving.

14   Let me ask you, in terms of that issue, do you think in claims

15   one through five that theory of liability applies?

16         MS. CLARK:  If I understand Your Honor's distinction,

17   I believe that we've addressed this in our motion, which is if

18   and when there's a finding of allegations of negligence that

19   joint and several liability would then attach, we would

20   strongly disagree with that.  We as the hospital cannot be

21   held jointly and severally liable for the acts -- the

22   independent acts of a physician.  And, likewise, if we're

23   going on a claim of negligence with respect to our client

24   Nurse Beard, she also may not be held jointly and severally

25   liable based on allegations of negligence against the

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/07/23   USDC Colorado   pg 30 of 41
pg 30 of 41

1   individual physicians.

2            Those are very clear black letter law in Colorado

3   based on the corporate practice of medicine as it pertains to

4   HCA Swedish Medical Center and the unauthorized practice of

5   medicine on behalf of Nurse Beard.  Neither one of those

6   defendants may be held jointly and severally liable for the

7   independent decision-making of alleged acts of negligence as

8   they pertain to physicians.  So when that becomes ripe we

9   would certainly argue strongly that those don't attach and

10  they don't apply to my clients.

11           THE COURT:  All right.  Well, I'll deal with that

12  when I get to it in a moment, but what I'm basically trying to

13  spare us all is another motion to dismiss briefing.  So I

14  would just simply urge the plaintiff to consider whether an

15  amendment will be needed to be made or not.  If it's simply a

16  theory of liability that attaches to one of the other five

17  claims, I don't necessarily think you need to amend the

18  complaint.  But I want you to think about that, because if you

19  do in some substantial way, and/or add another claim, we'll be

20  back here again, and I'd rather get the case going through

21  discovery and kind of move on.  So just think about it.

22  Definitely confer.  If plaintiff is going to file a motion to

23  amend, please confer about it, and maybe we can resolve some

24  of it in the absence of my involvement.

25           MS. THOMPSON:  Your Honor, I will.  I will talk with

                          Sarah K. Mitchell, RPR, CRR

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/09/23   USDC Colorado   pg 31 of 41
pg 34 of 41

1    all defense counsel about that.

2            THE COURT:  Perfect.  Thank you for arguing.

3            Let me just ask, Mr. Lugo, did you write the brief on

4    behalf of the defendants?

5            MR. LUGO:  Your Honor, I wrote the reply brief, not

6    the original motion.

7            THE COURT:  Perfect.  Well, thank you for letting the

8    person who wrote part of the brief argue.

9            How about you, Ms. Monnett, did you write the brief?

10           MS. MONNETT:  Yes, I did write the brief.

11           THE COURT:  Thank you, Ms. Thompson, for letting her

12   actually do the argument.  That's helpful.

13           All right.  The Court's prepared to rule on both

14   motions at this time.  I didn't identify the other motion

15   which I will just now for the record.  Defendants Smith,

16   Beard, HCA HealthONE have filed a motion to strike plaintiff's

17   sixth claim for relief, which is ECF 63.  This case involves

18   basically a claim for medical malpractice stemming from

19   injuries to the plaintiff's leg following a motorized scooter

20   incident in May of 2020.  The facts pertaining to the injury

21   don't seem to be in dispute, at least in terms of what

22   happened to the plaintiff.

23           He was hospitalized as a result of his injury, was

24   released that same day, reported pain that same day, and

25   called 911.  Denver Health EMS responded, particularly

CaSeseNdoN.1.2224-eve0102d353-KGSF-NRTINPOoDocouroeneat 48fileed 067/1004/1232/16d5242C Cu8DadCoColoptagad32 of pg 321of 41

 1   Quintana and Ludtke.  At that time they evaluated the

 2   plaintiff.  According to the plaintiff, he believed he should

 3   go to the hospital.  According to the plaintiff those two

 4   individuals indicated the pain was normal and he need not go

 5   to the hospital.  Two days later the plaintiff, still in

 6   intense pain, called his doctor, went to the University of

 7   Colorado hospital where he then was -- had surgery for what's

 8   called a compartment syndrome and now allegedly has

 9   irreversible leg and feet damage.

10            DHHA defendants, which encompass DHHA and the two

11   paramedics, have moved to dismiss the claims against them

12   citing immunity provided by the Colorado Governmental Immunity

13   Act claiming DHHA is a public entity, and as Quintana and

14   Ludtke were in the performance of their duties, they are

15   entitled to immunity as well, as the plaintiff has not alleged

16   willful and wanton conduct and only alleges negligence.

17            DHHA defendants assert they do not fit within the

18   public hospital exception to the Colorado Governmental

19   Immunity Act claiming that the services of the paramedic

20   division are essentially ancillarily or remotely related to

21   the primary purpose of the hospital.  Because of that they

22   believe the immunity still attaches to Quintana and Ludtke.

23   The DHHA defendants mount both facial and factual attacks to

24   the plaintiff's claims in the dismissal motion.

25            For the following reasons and after considering the

Case No. 1:22-cv-01191-CNS-NRN   Document 84   filed 06/09/23   USDC Colorado   pg 33 of 41
pg 33 of 41

 1   parties' briefs and the arguments here today the Court will

 2   deny the defendant -- DHHA defendants' motion.  The Colorado

 3   Governmental Immunity Act generally provides sovereign

 4   immunity to public entities against tort claims.  That

 5   sovereign immunity may be waived in certain circumstances

 6   specified by statute at C.R.S. Section 24-10-106.

 7          One of the statutory waivers, which all the parties

 8   agree is the one applicable here, includes cases where a

 9   plaintiff brings a lawsuit for injuries resulting from the

10   operation of any public hospital, and that's Section

11   106(1)(b).  As the Court of Appeals explained in *Daley v.*

12   *University of Colorado Health Sciences Center*, 111 P.3d 554,

13   the plaintiff bears the burden of establishing subject matter

14   jurisdiction under the Colorado Governmental Immunity Act.

15          The Supreme Court of Colorado has also explained in

16   *Burnett v. State Department of Natural Resources*, 346 P.3d

17   1005 at 1008, that because the Colorado Governmental Immunity

18   Act varies from the common law, Courts strictly construe its

19   grants of immunity and broadly construe its waivers.  Both

20   parties seem to agree with that as well.  Thus, the

21   fundamental question for the Court is whether Denver Health

22   Paramedic Division falls within Section 24-10-106(1)(b)'s

23   waiver for operations of a public hospital.

24          The parties have identified several statutory

25   provisions that are helpful to the Court's analysis.  For

Case No. 1:22-cv-01191-CNS-NRN   Document 48   filed 06/09/23   USDC Colorado   pg 34 of 41
pg 34 of 41

1    instance, under 24-10-118(2)(a) public employees are not

2    immune under the CGIA in actions for injuries resulting from

3    circumstances specified in 24-10-106, including the public

4    hospital exception at (1)(b).  Essentially that means if the

5    entity is found to be within the public hospital exception,

6    the employees who are performing their duties for that entity

7    will also be found within the exception.

8            Furthermore, operation is statutorily defined as the

9    act or omission of a public entity or a public employee in the

10   exercise and performance of the powers, duties, and functions

11   vested in them by law with respect to the purposes of any

12   public hospital, and that language is directly from

13   24-10-103(3)(a).  Case law in Colorado has defined public

14   hospital as an institution or place where sick or injured

15   persons are given medical or surgical care.  That's from

16   *Sereff v. Waldman*, 30 P.3d 754 at 756, a Colorado Court of

17   Appeals decision.

18           Both parties point to C.R.S. Section 25-29-104 as an

19   articulation of the DHHA's mission and purpose.  The mission

20   of DHHA as a public entity is multifactorial as set forth in

21   that statute and includes providing healthcare services to the

22   citizens of Denver and the Rocky Mountain region in many

23   different settings as well as to advance public health

24   education and research.  And under the Colorado Governmental

25   Immunity Act, the alleged injury underlying the action must be

Case No. 1:22-cv-01191-CNS-NRN Document 48 Filed 06/09/23 USDC Colorado pg 35 of
pg 35 of 41

 1   directly related to the purpose as distinct from the operation

 2   of Section 106(1)(b) facility before the Court will find that

 3   sovereign immunity has been waived.  That comes from *Craven v.*

 4   *University of Colorado Hospital Authority*, 260 F.3d 1215,

 5   Tenth Circuit, 2001.

 6           I've gone through the allegations in the claim -- in

 7   this case, the nature of the claims.  Essentially the argument

 8   is that the plaintiff cannot show sovereign immunity and the

 9   CGIA has been waived because the facts show only that the

10   paramedics division was ancillary to the primary purpose of a

11   public hospital and that the conduct alleged in the complaint

12   did not take place at a public hospital as defined in *Sereff*.

13   The Court disagrees.  In reaching this conclusion, the Court

14   finds the reasoning of *Sereff* persuasive and concludes that

15   like the residency program there, here, the work of the

16   paramedic division furthered the purposes of a public hospital

17   and was related to the operation of a public hospital for

18   purposes of Section 106.

19           Fundamentally as required by the CGIA and case law,

20   the paramedics division is directly related to the purpose of

21   a public hospital.  The chief of the paramedic division has

22   said that the paramedic division is a core service of DHHA.

23   DHHA oversees and controls many of the paramedic division's

24   operations, policies, and practices.  The paramedic division

25   provides medical care and medical transportation to sick or

Case No. 1:22-cv-01191-CNS-NRN Document 84 filed 06/09/23 USDC Colorado pg 36 of 41
pg 36 of 41

 1   injured individuals consistent with *Sereff*'s definition of

 2   public hospital as a place where sick or injured persons are

 3   given medical care.

 4        For this reason it is not material that, as defendant

 5   argues, the plaintiff's alleged injury occurred in his home

 6   rather than at a public hospital because the paramedic

 7   division services are directly related to the purpose of a

 8   public hospital and its operations.  The defendants have cited

 9   many cases in support of the argument that the CGIA bars

10   plaintiff's claims, but these cases are distinguishable and

11   therefore unpersuasive.

12        The Tenth Circuit in *Craven* concluded that a wrongful

13   discharge claim regarding an administrative employee based on

14   a personnel action was only remotely related to the hospital's

15   purpose.  But *Craven*'s personnel action is distinct from the

16   services that the paramedic division provides, which

17   undoubtedly relate to the purpose of a public hospital, which

18   is to provide medical or surgical care to sick or injured

19   persons.

20        Defendants' cite to *Pack v. Arkansas Valley*, 894 P.2d

21   34, is also misplaced.  There the Court of Appeals concluded

22   that the maintenance of a visitor's lot was ancillary and not

23   directly related to a correctional facility's purpose.  But

24   the maintenance of a parking lot is wholly different from the

25   work of paramedics, especially given the purpose of public

Case No. 1:22-cv-01191-CNS-NRN   Document 48   Filed 06/09/23   USDC Colorado   Page 37 of 41
pg 37 of 41

1    hospitals under Colorado law.  The role and work of the

2    paramedic division is also unlike the ancillary recordkeeping

3    functions in *Richland* at 934 P.2d 841.  The role of the

4    paramedic division furthers the purpose of the hospital, its

5    operation, and the execution of the hospital's purpose.

6         For the same reason the Court finds *Daley*, 111 P.3d

7    554, a Colorado Court of Appeals decision in 2005,

8    unpersuasive because the paramedic division performs work that

9    is entirely different from the risk analysis claim review and

10   litigation assistance in that case.  The same is true of *Awad*

11   because there, unlike here, the claims only indirectly related

12   to patient care.  As articulated in *Flores v. Colorado*

13   *Department of Corrections*, 3 P.3d 464, the work of the

14   paramedic division is directly related to the purpose of the

15   public hospital.

16        *Plummer v. Little* also fails to persuade because in

17   there it was -- that case involved a clinic offering only

18   outpatient care and was not licensed or even affiliated with

19   the licensed hospital.  That the Court of Appeals concluded

20   that the entity there was not associated with the public

21   hospital was not surprising because of that lack of

22   affiliation.  That is directly contrary to what is occurring

23   here when it is undisputed that the hospital somewhat

24   supervises and helps train the paramedics, and, indeed, the

25   paramedics report to those folks when they have questions.

Case No. 1:22-cv-01191-CNS-NRN Document 84 Filed 06/09/23 USDC Colorado pg 38 of 41
pg 38 of 41

 1          *Montoya* involved a nursing home case.  Again, that

 2   had no affiliation with a separate hospital and was not tied

 3   to the purposes of a public hospital.  At bottom, the DHHA

 4   defendants' argument relies on these cases, but they are

 5   distinguishable.  The paramedic division in this case clearly

 6   performs work including the services provided by Quintana and

 7   Ludtke on behalf of the division.  That is directly related to

 8   the hospital's purpose and operation, and plaintiff has met

 9   his burden of showing that sovereign immunity is waived under

10   the public hospital exception at 106(1)(b).  Thus the motion

11   is denied.

12          Turning to ECF 53, the Court will grant defendants'

13   joint motion to strike plaintiff's sixth claim for relief.

14   The Court agrees with defendants that joint and several

15   liability is a theory of liability, not a claim, and it is

16   therefore proper to strike plaintiff's separate claim for

17   relief for joint and several liability.  Several cases support

18   this conclusion that under Colorado law joint and several

19   liability is a theory of liability, not a separate cause of

20   action.  Those cases include *Barton v. Adams Rental*, 938 P.2d

21   532, Colorado Supreme Court, 1997; *Hughes v. Johnson*, 764

22   F.Supp. 1412 at 1413, District Court of Colorado, 1991; and

23   *Lewis v. Powers*, 2017 WL 1023376.  That's District Court of

24   Colorado, March 15th of 2017.

25          The Court agrees with defendants that it's

```
 1   appropriate to strike plaintiff's sixth claim for relief

 2   pursuant to Federal Rule of Procedure 12(f), and further

 3   agrees with defendants that Dr. Smith's late joinder in the

 4   motion was not improper.

 5           The Court declines to address the arguments

 6   pertaining to the actual issue of joint and several liability

 7   and as to whether that theory applies to any of the claims at

 8   this point or in the future.  Because the claim has been

 9   stricken, I feel no need to go on and address the further

10   issue of their -- of the ultimate application of the theory to

11   any others of plaintiff's claims until that has been made and

12   done.  For those reasons the Court will grant ECF 53.

13           Now, this motion is granted without prejudice as to

14   plaintiff's ability to file a motion to amend the complaint,

15   but I would just, again, encourage plaintiff to fully confer

16   about that, but if you choose to file the motion, please do so

17   by June 30th.  I think there -- it's probably not adding much

18   to the plaintiff's other claims, and to the extent the

19   plaintiff wants to pursue that theory of liability on claims

20   one through five, it's basically already in the complaint and

21   it would not need an amendment, but I'll leave that up to you.

22           All right.  Given that ruling, does either party have

23   any other questions or issues to bring to the Court's

24   attention today?

25           MS. MONNETT:  Nothing from the plaintiff, Your Honor.
```

```
 1            THE COURT:  Thank you.
 2            MR. LUGO:  Briefly, Your Honor.  I'd like to point
 3   out that if we were in state court we'd have a right to an
 4   interlocutory appeal on the CGIA issue.  We will be evaluating
 5   that possibility in this case, and if we do decide to proceed
 6   down that road, we'll let the Court know as soon as possible.
 7            THE COURT:  Thank you.  Anything else?
 8            MS. CLARK:  Nothing further, Your Honor.
 9            MS. KLEIN:  Nothing further, Your Honor.
10            THE COURT:  Thank you, everyone.  We'll be in recess.
11            THE COURTROOM DEPUTY:  All rise.  Court is in recess.
12         (The proceedings were concluded at 11:00 a.m.)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Sarah K. Mitchell, RPR, CRR

1                          REPORTER'S CERTIFICATE

2

3          I, SARAH K. MITCHELL, Official Court Reporter for the

4    United States District Court for the District of Colorado, a

5    Registered Professional Reporter and Certified Realtime

6    Reporter, do hereby certify that I reported by machine

7    shorthand the proceedings contained herein at the time and

8    place aforementioned and that the foregoing pages constitute a

9    full, true and correct transcript.

10         Dated this 9th day of June, 2023.

11

12

13

14              _____/s/ Sarah K. Mitchell_____

15                    SARAH K. MITCHELL
                    Official Court Reporter
16             Registered Professional Reporter
                 Certified Realtime Reporter
17

18

19

20

21

22

23

24

25

                    Sarah K. Mitchell, RPR, CRR