22CA0663 Roudybush v Catholic Health 05-11-2023

COLORADO COURT OF APPEALS

DATE FILED: May 11, 2023
CASE NUMBER: 2022CA663

Court of Appeals No. 22CA0663
El Paso County District Court No. 19CV32522
Honorable David Prince, Judge

Aron Roudybush, by and through his conservators, Nora and Randall Roudybush,

Plaintiff-Appellee,

v.

Catholic Health Initiatives Colorado, d/b/a Centura Health Penrose St. Francis Health Services; and Janny Van Dusseldorp, R.N.,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE WELLING
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 11, 2023

Leventhal Puga Braley P.C., James E. Puga, Molly L. Greenblatt, Alex Wilschke, Nathaniel E. Deakins, Denver, Colorado, for Plaintiff-Appellee

Rendigs, Fry, Kiely & Dennis, LLP, W. Jonathan Sweeten, Michael P. Foley, Boulder, Colorado; Jackson Kelly PLLC, Gilbert A. Dickinson, Eric R. Holway, Denver, Colorado, for Defendants-Appellants

Ogborn Mihm, LLP, Kylie M. Schmidt, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

¶ 1   Catholic Health Initiatives Colorado d/b/a Centura Health Penrose St. Francis Health Services (Penrose) appeals the trial court's order denying its motions for a directed verdict and judgment notwithstanding the verdict (JNOV) in favor of the plaintiff, Aron Roudybush by and through his conservators (and parents) Randall and Nora Roudybush.  We affirm.

I.   Background

¶ 2   Aron Roudybush was born via vaginal delivery at Penrose. During his birth, the obstetrician used a vacuum device to facilitate delivery.  The vacuum device attached to Aron's head, applying suction and traction, and allowed the obstetrician to pull Aron out while his mother pushed.

¶ 3   During the delivery, Aron suffered neurological injuries. Aron's parents, on behalf of Aron, filed suit against Penrose; the obstetrician, Dr. Javine Horani; and the labor and delivery nurse, Janny Van Dusseldorp, R.N.  The Roudybushes alleged that Penrose, Dr. Horani, and Nurse Van Dusseldorp were negligent in their care during Aron's birth, and that their negligence caused Aron's injuries.

¶ 4     This case was tried to a jury.  During trial, the jury heard evidence regarding the duty of care owed to patients by hospitals, doctors, and nurses.  This evidence included expert testimony on a hospital's duty to "teach the nurses about the use of the vacuum" and that Penrose didn't "educate the nurses appropriately on an operative vaginal delivery."

¶ 5     After counsel for the Roudybushes rested their case, counsel for Penrose moved for a directed verdict on the issue of whether Penrose owed a duty to Aron.  The trial court denied the motion.  Following trial, the jury returned a verdict against Penrose.  The jury found that Aron suffered damages and that Penrose's negligence was the cause of those damages, which the jury calculated at $8,030,003.  Additionally, the jury determined that neither Dr. Horani nor Nurse Van Dusseldorp was negligent.  After the trial court entered judgment against Penrose, Penrose filed a motion for JNOV, challenging whether the jury had a legally

sufficient basis to find that Penrose owed a duty of care to Aron. The trial court denied Penrose's motion. Penrose now appeals.[1]

## II.   Analysis

¶ 6    Penrose raises three contentions on appeal. First, Penrose contends that, as a matter of law, it didn't owe a duty to the Roudybushes. Second, Penrose contends that the Roudybushes failed to present sufficient evidence that Penrose proximately caused Aron's injuries. And third, Penrose contends that the jury's determination that neither Dr. Horani nor Nurse Van Dusseldorp was negligent further demonstrates that there is insufficient evidence that Penrose proximately caused Aron's injuries.

¶ 7    We address each contention, in turn, below.

### A.   Applicable Law and Standard of Review

¶ 8    To prove their negligence claim against Penrose, the Roudybushes must show that (1) Penrose owed a legal duty to Aron; (2) Penrose breached that duty; and (3) the breach of duty caused

---

[1] No party appeals the jury's verdicts with respect to Dr. Horani or Nurse Van Dusseldorp.

the harm resulting in the damages alleged. *Settle v. Basinger*, 2013 COA 18, ¶ 54.

¶ 9   We review de novo a district court's denial of a motion for directed verdict and a motion for JNOV. *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 9. When doing so, we view the evidence, and draw all reasonable inferences, in the light most favorable to the nonmoving party. *Id.* A court shouldn't grant either motion unless there is no evidence that could support a verdict against the moving party on the claim. *Id.*

B.   Analysis

1.   Duty

¶ 10   The parties disagree how to frame the first issue on appeal. Penrose contends that, as a matter of law, it had no duty to have a policy on the maximum number of pulls in a vacuum delivery, nor did it have a duty to train nurses on such a policy. The Roudybushes contend that Penrose fails to address their actual theory of liability — namely, that "Penrose failed to adequately train, educate, and prepare Nurse Van Dusseldorp for her independent role in the vacuum delivery process" and that, through this failure, Penrose breached its duty to Aron; the Roudybushes

4

contend that their theory of liability against Penrose didn't include the failure to have a policy.

¶ 11  We agree with the Roudybushes' framing of the first issue. This case doesn't turn on whether Penrose had a legal duty to have a policy; instead, it turns on whether Penrose owed Aron a legal duty and what the scope of that duty was.

¶ 12  Whether a defendant owes a plaintiff a duty is a question of law to be determined by the court. *HealthONE v. Rodriguez*, 50 P.3d 879, 888 (Colo. 2002). For negligence claims based on a defendant's failure to act (nonfeasance), our supreme court has recognized the hospital-patient relationship as being one of several special relationships that justify the imposition of a duty.[2] *Lopez v. Trujillo*, 2017 CO 79, ¶ 27. Because our supreme court has recognized that the hospital-patient relationship imposes a duty on hospitals, we conclude that Penrose did owe a duty to Aron and his mother while they were patients.

---

[2] Other special relationships recognized by our supreme court include common carrier/passenger; innkeeper/guest; possessor of land/invited entrant; employer/employee; and parent/child. *Lopez v. Trujillo*, 2017 CO 79, ¶ 27.

¶ 13    We turn next to the scope of that duty.

## 2.    Scope of Duty

¶ 14    In determining the scope of a duty, courts consider several factors, including (1) the risk involved; (2) the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct; (3) the magnitude of the burden guarding against injury or harm; and (4) the consequences of placing the burden upon the actor.  *HealthONE,* 50 P.3d at 888.  We address each of the *HealthONE* factors to determine whether Penrose's duty to Aron required it to adequately train, educate, and prepare Nurse Van Dusseldorp for her independent role in the vacuum delivery process.

### a.    Risk Involved

¶ 15    In this case, the risk of failing to train and support the labor and delivery nursing staff is significant.  It's clear from the record that knowledge of the differing forms of vacuums, the length of time the vacuum is applied, and the number of pulls, as well as clear and specific medical chart documentation of the entire procedure, are essential when assisting a patient with a vaginal birth.  The evidence supports a reasonable inference that the misuse or

6

overuse of a vacuum carries a significant risk of injury to the baby. Therefore, this factor weighs in favor of a duty to adequately train, educate, and prepare the labor and delivery nursing staff on their independent role in the vacuum delivery process.

      b.  Foreseeability and Likelihood of Injury

¶ 16  The second factor is the foreseeability and likelihood of injury weighed against the social utility of Penrose's conduct.

¶ 17  Neither party disputes that there is risk involved in a vacuum-assisted vaginal delivery. And there was sufficient evidence presented at trial regarding the known risks of using a vacuum to assist in a vaginal delivery, as well as the risks of misuse. For example, an expert witness testified that a vacuum-assisted delivery is a "high-risk procedure." Dr. Horani testified that "there are risks with placing [the vacuum,] there are risks with pulling, and it escalates the more you do."

¶ 18  Because of the foreseeability of the risks involved, this factor weighs in favor of finding that Penrose had a duty to adequately train, educate, and prepare the labor and delivery nursing staff on their independent role in the vacuum delivery process.

c.     Magnitude of the Burden

¶ 19    The third factor is the magnitude of the burden on Penrose. While there was little evidence presented on this factor as it pertains to vacuum-assisted delivery training for nursing staff, there was evidence presented on nurses undergoing yearly competency training and the requirement that nurses have a certain amount of continuing education in order to maintain their licenses.  Additionally, there was expert testimony that hospitals provide continuing education opportunities to their nurses.  Based on the evidence that it is routine for hospitals to provide continuing education opportunities, it follows that it would not impose a substantial burden on the hospital to provide a training on the nursing staff's independent role in the vacuum delivery process.

d.     Consequences of the Burden

¶ 20    Finally, we look to the consequences of placing such a burden on Penrose.  Based on the already existing structure of continuing education classes that are available through hospitals, and because training the nursing staff on a specific procedure doesn't override or change the physician's authority in the delivery room, the consequences of this burden are minimal.

8

e.  Summary

¶ 21   Penrose contends that the "decision of whether and how to use a vacuum, including the number of pulls, is a medical decision," potentially implicating the corporate practice of medicine doctrine.[3] We don't disagree with Penrose, but this doesn't change our analysis. Whether Penrose had a duty to have a policy on the maximum number of vacuum pulls allowed in a vacuum-assisted delivery isn't before us. The issue before us is whether Penrose had a duty to train, educate, and prepare its nonphysician labor and delivery staff on their role in the vacuum delivery process, and, based on the *HealthONE* factors, it did owe this duty to Aron.

---

[3] The corporate practice of medicine doctrine rests on the idea that it's impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine. Under this common law doctrine, a corporation didn't traditionally employ doctors, perform medical services, or interfere with a doctor's independent medical judgment. This doctrine has generally shielded corporations from vicarious liability for the negligent acts of their physicians. *See Daly v. Aspen Ctr. for Women's Health, Inc.*, 134 P.3d 450, 452 (Colo. App. 2005). *But cf.* § 12-240-138, C.R.S. 2022 (not applicable in this case).

9

### 3. Proximate Cause

¶ 22    Penrose contends that even if it had a duty to provide further training to the nurses, including documentation and training as to the number of pulls, and even if the jury found that Penrose violated that duty, there is "absolutely no evidence that . . . such additional training" would have changed the outcome of Aron's birth.  We aren't persuaded.

¶ 23    Proving causation requires the plaintiff to show that the defendant's allegedly negligent conduct proximately caused the claimed injury.  *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011).  Causation in fact means the harm wouldn't have occurred but for the alleged negligence — known as the but-for test.  *Id.*  A plaintiff satisfies the but-for test by showing the negligent conduct in a "natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which the result would not have occurred."  *N. Colo. Med. Ctr., Inc. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902, 908 (Colo. 1996) (quoting *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)).  While a plaintiff isn't required to "prove with absolute certainty that the defendant's conduct caused

10

the plaintiff's harm," the plaintiff must "introduce[] evidence from which reasonable [jurors] may conclude that it is more probable that the event was caused by the defendant than that it was not." *Reigel*, 292 P.3d at 988 (first quoting *Nelson v. Hammon*, 802 P.2d 452, 457 (Colo. 1990); and then quoting Restatement (Second) of Torts § 433B cmt. b (Am. L. Inst. 1965)).

¶ 24   Questions of negligence and proximate cause are issues of fact to be determined by the jury, and the appellate courts are bound by the jury's findings when there is competent evidence in the record to support those findings. *See Morales v. Golston*, 141 P.3d 901, 906 (Colo. App. 2005). "The task of the reviewing court is to examine the instructions, the verdict forms, and the evidence and to determine from the record whether there was competent evidence from which the jury logically could have reached its verdict." *Id.* "Also, if there is a view of the case that makes the jury's answers consistent, they must be resolved in that way." *Id.*

¶ 25   In this case, the jury's finding that Penrose was negligent could be based on, as the Roudybushes urge, evidence that Penrose failed to fulfill its duty to train and educate the labor and delivery

11

nursing staff.  During her testimony, the plaintiff's expert testified that

> hospitals are accountable to teach nurses about the use of the vacuum; and, therefore, nursing lack of knowledge related to the vacuum use and [the nurse's] role that she has during that operative vaginal delivery, if she's not knowledgeable of the indications, the risks, and the overall use of the vacuum as far as applications and pulls and pop-offs, that increases the risk of injury because then [the nurse] is unable to recognize whether there's patient safety going on, you know, with the well-being of the mom and baby.

¶ 26   She also testified that a nurse isn't able to fulfill her duty if she's "not educated properly" and that Penrose "did not have a policy *or educate the nurses appropriately on an operative vaginal delivery*."  (Emphasis added.)

¶ 27   The evidence supports a reasonable conclusion that because of a lack of education, Nurse Van Dusseldorp lacked adequate training on the signs of fetal distress in a vacuum-assisted delivery, the difference between vacuum options, the risks of vacuum-assisted delivery, and the importance of documenting critical steps in the delivery process.  And because Nurse Van Dusseldorp wasn't adequately trained or educated, she was unaware of and unable to

fulfill her role in the labor and delivery process.  Therefore, contrary to Penrose's contention, competent evidence — including expert testimony — supports the jury's finding that Penrose's negligence proximately caused Aron's injuries.

4. Proximate Cause Despite the Verdict in Favor of Dr. Horani and Nurse Van Dusseldorp

¶ 28   Finally, Penrose contends that the absence of causation is further demonstrated by the jury verdict in favor of Dr. Horani and Nurse Van Dusseldorp because, based on the verdict forms, the jury specifically found that their negligence, if any, did not cause Aron's injuries.

a. Jury Verdict

¶ 29   On the special verdict form, the jury found as follows:

> 1. Did the Plaintiff, Aron Roudybush, have damages? (Yes or No)
>
> ANSWER: Yes.
>
> 2. Was the defendant Penrose negligent? (Yes or No)
>
> ANSWER: Yes.
>
> 3. Was the negligence, if any, of the defendant Penrose, a cause of the damages claimed by the Plaintiff? (Yes or No)
>
> ANSWER: Yes.

13

4. Was the defendant, Javine Horani McLaughlin, MD, negligent? (Yes or No)

ANSWER: No.

5. Was the negligence, if any, of the defendant, Javine Horani McLaughlin, MD, a cause of any of the damages claimed by the Plaintiff? (Yes or No)

ANSWER: No.

6. Was the defendant, Janny Van Dusseldorp, RN, negligent? (Yes or No)

ANSWER: No.

7. Was the negligence, if any, of the defendant, Janny Van Dusseldorp, RN, a cause of any of the damages claimed by the Plaintiff? (Yes or No)

ANSWER: No.

¶ 30    Penrose contends that "the verdict form specifically found that [Dr. Horani and Nurse Van Dusseldorp] *did not cause* Aron's injury." However, this isn't what the jury found. The jury was asked whether Dr. Horani's or Nurse Van Dusseldorp's "*negligence, if any*," caused of Aron's injuries. (Emphasis added.) This is different than asking if their *actions* caused Aron's injuries — which is a question the jury wasn't tasked with answering.

14

¶ 31   With this in mind, we turn to whether there is a sufficient basis to establish proximate cause against Penrose in light of the jury's verdicts in favor of Dr. Horani and Nurse Van Dusseldorp.

                b.   Analysis

¶ 32   The Roudybushes pursued three independent liability claims — one against Penrose, one against Dr. Horani, and one against Nurse Van Dusseldorp.  There was no claim of vicarious liability alleged against Penrose.  Instead, the claims against each defendant are independent, and the jury was instructed on the separate and distinct roles of and claims against each defendant.  On this record, the jury could have reached a reasonable conclusion that, because of the lack of training and education provided by Penrose, Nurse Van Dusseldorp didn't violate her standards of care, and therefore she wasn't negligent because she was ill-prepared through no fault of her own.  Instead, it was Penrose that failed to fulfill its duty to Aron by not adequately preparing Nurse Van Dusseldorp through appropriate education and training.

¶ 33   Based on the evidence presented at trial, we conclude that the findings that Dr. Horani and Nurse Van Dusseldorp weren't negligent aren't irreconcilable or in direct conflict with the finding

15

that Penrose was negligent. Accordingly, the verdicts in favor of the other two defendants don't require a vacatur of the judgment against Penrose.

## III. Disposition

¶ 34     For the reasons above, the judgment in favor of the Roudybushes and against Penrose is affirmed.

JUDGE FOX and JUDGE KUHN concur.

# Court of Appeals

**STATE OF COLORADO**
2 East 14th Avenue
Denver, CO 80203
(720) 625-5150

**PAULINE BROCK**
**CLERK OF THE COURT**

## NOTICE CONCERNING ISSUANCE OF THE MANDATE

Pursuant to C.A.R. 41(b), the mandate of the Court of Appeals may issue forty-three days after entry of the judgment. In worker's compensation and unemployment insurance cases, the mandate of the Court of Appeals may issue thirty-one days after entry of the judgment. Pursuant to C.A.R. 3.4(m), the mandate of the Court of Appeals may issue twenty-nine days after the entry of the judgment in appeals from proceedings in dependency or neglect.

Filing of a Petition for Rehearing, within the time permitted by C.A.R. 40, will stay the mandate until the court has ruled on the petition. Filing a Petition for Writ of Certiorari with the Supreme Court, within the time permitted by C.A.R. 52(b), will also stay the mandate until the Supreme Court has ruled on the Petition.

BY THE COURT:   Gilbert M. Román,
Chief Judge

DATED: January 6, 2022

*Notice to self-represented parties: You may be able to obtain help for your civil appeal from a volunteer lawyer through The Colorado Bar Association's (CBA) pro bono programs. If you are interested in learning more about the CBA's pro bono programs, please visit the CBA's website at www.cobar.org/appellate-pro-bono or contact the Court's self-represented litigant coordinator at 720-625-5107 or appeals.selfhelp@judicial.state.co.us.*