IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02353-GPG-TPO

VICTOR MOSES,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
DENVER HEALTH AND HOSPITAL AUTHORITY,
TODD GENTRY, individually,
STEPHEN MARINO, individually,
ANTHONY NORMAN, individually,
FELIPE CERVANTES, individually,
KYLE CARTER, individually,
JOHNNA AITKEN, individually,
LISA AITKEN-NELSON, individually,
JASON MOORE, individually,
DAMON ROMAN, individually,
E. M. ALFARO, individually,
BRIAN CAMOZZI, individually,
COURTNEY WHAM, individually,
TAEGIN SUNG, individually,

    Defendants.

---

**REPLY IN SUPPORT OF CITY OF DENVER AND POLICE DEFENDANTS'
MOTION TO DISMISS**

---

Defendants City and County of Denver, Colorado ("City of Denver"); Todd Gentry; Stephen Marino; Anthony Norman; Felipe Cervantes; Kyle Carter; Johnna Aitken; Lisa Aitken-Nelson; Jason Moore; Damon Roman; E.M. Alfaro; and Brian Camozzi (the "Police Defendants" and collectively with City of Denver, the "City of Denver Defendants"), respectfully submit this reply in support of their Motion to Dismiss.

# INTRODUCTION

The situation giving rise to this case was a terrible workplace incident. But not every workplace incident becomes a constitutional violation simply because the government is the employer or because a fellow officer was involved in the employee's injury during physical training. Even accepting all factual allegations in the Complaint as true, nothing in Plaintiff's Response is sufficient to transform the incident here into a constitutional violation.

# ARGUMENT

### I. City Defendants Do Not Argue that the Fourth Amendment Does Not Apply in Police Training Contexts, But Rather that the City Defendants did not violate the Fourth Amendment.

City Defendants do not and have not asserted that police training is "a rights-free zone," (Response, at 1), that it is a "*per se* exclusion" from the constitution, (Response, at 7), or that "the Fourth . . . Amendment can never apply to police training," (Response, at 10). The heart of Fourth Amendment protection is reasonableness under the specific circumstances. City Defendants merely assert that the circumstances of a police training exercise necessarily dictate a different standard of reasonableness than that required in an ordinary citizen-officer interaction.

This position is supported by the Ninth Circuit's holding in *Jensen v. City of Oxnard*, 145 F.3d 1078 (9th Cir. 1998). In that case, Officer Jensen was shot and killed by a fellow officer during a SWAT team raid of a building, when the officer mistook Officer Jensen for a gun-wielding building occupant. His wife brought a § 1983 claim against the City of Oxnard. The court held that "Officer Jensen did not forfeit all constitutional rights when

2

he became a member of the police force." *Id.* "In particular, he retained the right at issue here—the Fourth Amendment right to be free from unreasonable seizure by fellow officers while performing police work." *Id.*

In coming to this holding, however, the Ninth Circuit noted that "Officer Jensen volunteered for the dangerous police work associated with SWAT teams." *Id.* And, because of this, Mrs. Jensen could not "argue that her husband is like those individuals to whom the State owes a duty to care because they have been deprived of their liberty." *Id.* Police officers do not forfeit their constitutional rights merely because they are police officers. The fact that they are police officers, however, and that the alleged violation occurred in a police context is relevant to and part of the circumstances to be considered when undertaking a reasonableness analysis.

A person is constitutionally seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The police training context is relevant to the seizure analysis, because "[a] seizure occurs only when a person submits to the show of lawful authority or the application of physical force by an officer *acting in the role of a law enforcement agent rather than as a public employer or supervisor*." *Driebel v. City of Milwaukee*, 298 F.3d 622, 642 (7th Cir. 2002) (emphasis added). This is because "[o]rdinarily, when people are at work their freedom to move about has been meaningfully restricted, not by the actions of law enforcement officials, but by the workers' voluntary obligations to their employers." *I.N.S. v. Delgado*, 466 U.S. 210, 218 (1984). Thus, it must be the threat of physical detention by the government as

3

law enforcement that makes a person feel that he is not free to leave, not the risk of embarrassment in front of his peers or of adverse employment consequences for failing to complete mandatory training. *See Driebel*, 298 F.3d at 642 (explaining that "the possibility or even probability of a future adverse employment action—as opposed to physical detention—cannot enter our analysis of whether the officers in this case were seized"); *Feirson v. D.C.*, 315 F. Supp. 2d 52, 60 (D.D.C. 2004), aff'd, 506 F.3d 1063 (D.C. Cir. 2007) (same). Indeed, the Fourth Amendment "is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *Delgado*, 466 U.S. at 215 (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)).

Nothing about the Dynamic Action Drill would have indicated to any reasonable person that failure to complete the Dynamic Action Drill would result in the physical detention of that person. Plaintiff neither alleges that he feared physical detention if he stopped the Drill, nor that he could not ask to stop. Indeed, at no point did Plaintiff ask to stop the drill. On the contrary, Plaintiff repeatedly and voluntarily participated in the Dynamic Action Drill. He was "trying his best to continue," (Compl. ¶ 68), he was able to speak with the paramedics but did not request to stop, (Compl. ¶ 74), and he even stood back up to continue multiple times after getting knocked down, (Compl. ¶¶ 125-33).

## II.     Plaintiff Was Not Seized Under State or Federal Law.

Both the Colorado Constitution and the U.S. Constitution protect against unreasonable searches and seizures. While Colorado courts have stated that Colorado's constitution "protects a greater range of privacy interests than does its federal

4

counterparts," *People v. Oates*, 698 P.2d 811, 815 (Colo. 1985), a person's privacy interests are implicated in governmental searches, which look to a person's reasonable expectation of privacy, and are not implicates in seizures. *See id.* at 819 (affirming suppression order based on unconstitutional search); *People v. McKnight*, 2019 CO 36, ¶ 48 (holding that a sniff by a marijuana-trained drug dog is a search under the Colorado Constitution); *People v. Corr*, 682 P.2d 20 (Colo. 1984) (governmental use of telephone toll records is search under Colorado Constitution); *Sporlede*r, 666 P.2d 135 (governmental installation of pen register is search under Colorado Constitution); *Charnes v. DiGiacomo*, 612 P.2d 1117 (Colo. 1980) (governmental use of bank records is search under Colorado Constitution).

Colorado's definition of a constitutional seizure, on the other hand, is taken from its federal counterpart. *Compare Woodall v. Godfrey*, 2024 COA 42, ¶ 12 ("A 'seizure' occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." (quotations omitted)), *with Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."). When physical force is the means used, a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989); *id.* at 596-97 ("It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of

5

an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*")

Contrary to Plaintiff's assertions, pressuring Plaintiff to continue the Dynamic Action Drill is not "an intentional acquisition of physical control." The physical force used here was in the context of a police training exercise; the force used was not intended to restrain Plaintiff's liberty, but rather to simulate a real-life, on-the-street situation. This was not a situation where officers, acting in their capacity as police officers, were called to respond to an aggressive person who also happened to be an off-duty officer, like in *Acevedo v. Canterbury*, 457 F.3d 721, 723 (7th Cir. 2006). Everyone at the Dynamic Action Drill, whether officer, trainer, or recruit, was gathered for the purpose of training, learning, and evaluating in an employment context. Because there was no intention to deprive Plaintiff of his liberty, even if there was a governmentally caused termination of Plaintiff's freedom of movement, a constitutional seizure did not occur.

### III.     Plaintiff Was Not Subject to Excessive Force.

A claim of excessive force by a seized person is analyzed under the Fourth Amendment's objective reasonableness test; that same claim raised by a person who has not been seized is analyzed under the Due Process Clause, either as conscience-shocking or deliberately indifferent. If force used is objectively reasonable, then it does not rise to the level of conscience-shocking or deliberately indifferent. *See Barrie v. Grand Cnty., Utah*, 119 F.3d 862, 870 (10th Cir. 1997) (J. Briscoe, concurring) ("[T]he Fourth Amendment protections against unreasonable seizures are at least broad enough to

include all claims of excessive force."). Here, even presuming Plaintiff was seized—and he was not—any force used by the City Defendants was objectively reasonable.

Determining what is objectively reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quotations omitted). Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* The allegedly excessive force here took place during a use-of-force training exercise that lasted only a few minutes. The purpose of this force, and the government's interest in its use, is to prepare and train its future officers to undertake their roles and responsibilities in the face of suspects who will not be pulling punches. This is a significant interest. Moreover, Plaintiff voluntarily put himself in the position of having force used against him to further this very interest. Thus, even Plaintiff understood the importance of the governmental interests at stake.

Unlike the force used in *Marrero-Rodriguez v. Municipality of San Juan*, 677 F.3d 497 (1st Cir. 2012), the use of force in the Dynamic Action Drill was necessary to accomplish the goals of the Drill. In *Marrero-Rodriguez*, the plaintiff was shot in the back and killed during a training exercise while lying still and prone on the ground. *Id.* That exercise was undertaken without any certified instructors and using real, loaded firearms (when the training was to be undertaken without weapons). *Id.* at 500. The court determined that "no reasonable government interest in this training exercise justified a police officer taking out a firearm and placing it to the unprotected back of a prone officer,

7

who was face down, motionless, under control, and unarmed." *Id.* at 502.  Contrary to the training exercise in *Marrero-Rodriguez*, the training exercise here was justified by significant governmental interests and was undertaken by certified instructors with paramedics on site.  The use of force here was simply not excessive.

### IV. Plaintiff Fails to Cite to Any Clearly Established Law to Overcome Qualified Immunity.[1]

Although City Defendants' assertion of qualified immunity on a motion to dismiss may subject them to a more challenging standard of review, it does not allow Plaintiff to point to caselaw broadly addressing the rights in question and claim such caselaw put City Defendants on notice here.  Plaintiff still must show that the law was clearly established, and doing so requires Plaintiff to show that "there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019) (requiring such a showing on review of a motion to dismiss); *Jackson-Mackay v. McDonald*, No. 22-8033, 2023 WL 2544448, at *4 (10th Cir. Mar. 17, 2023) (same).  And, "the precedent must have clearly established the right 'in

---

[1] City Defendants do not dispute that qualified immunity was abrogated by C.R.S. § 13-21-131 as to Plaintiff's state constitutional claims, which is why City Defendants did not include such claims in the qualified immunity portion of their Motion to Dismiss. However, while not raised in the Motion to Dismiss, City Defendants note that the statute is silent as to the applicability of Colorado's common law public official immunity, and at least one court has held that the statute "does not prohibit the invocation of common law public official immunity in response to claims brought under newly enacted [statute]." *Termin v. Johnson*, 2022CV30614, Order re Defendants' Joint Motion for Determination of Law Regarding Availability of Common Law Immunity (Boulder Dist., Nov. 12, 2023) (attached for the Court's convenience at Exhibit A).

8

light of the specific context of the case, not as a broad general proposition.'" *Bustillos v. City of Artesia*, 98 F.4th 1022, 1034 (10th Cir. 2024) (quoting *Mullenix* v. *Luna*, 577 U.S. 7 (2015) (*per curiam*)).

None of the cases referenced by Plaintiff address the relevant constitutional rights in the context of police training, or even in the broader context of a constitutional claim made by one police officer against another. *United States v. Mendenhall*, for example, addressed the propriety of a seizure of heroin from a suspected narcotics trafficker by DEA agents at the airport. 446 U.S. 544, 547-48 (1980). *Graham v. Connor* involved an investigative stop that required calling in backup. 490 U.S. 386, 389 (1989). *Estate of Booker v. Gomez* arose from the death of an uncooperative arrestee in booking. 745 F.3d 405, 416 (10th Cir. 2014). These cases stand for broad propositions applicable to all constitutional cases, but they are insufficient to clearly establish law in the specific context of this case such that Police Defendants would be on notice that their actions were constitutional violations.

Indeed, not only are there no cases addressing this issue in the Tenth Circuit or the U.S. Supreme Court, but the "weight of authority from other courts" has found the law to be as Police Defendants maintain. *See, e.g.*, *Humes v. Gilless*, 108 F. App'x 266, 269 (6th Cir. 2004) (concluding that a claim for unreasonable seizure "was (and is) not clearly established with respect to this law enforcement training situation"); *Mallar v. City of Adelanto*, No. CV-11-02549 GAF (JEMx), 2013 WL 8148647, *9 (C.D. Cal. July 24, 2013) (noting that "the only similar cases have been decided in other circuits and those cases have held against officers asserting constitutional claims arising out of training injuries"

9

and stating that "[t]he court has found no case that remotely suggests that the defendant officers' conduct in the hostage training exercise is subject to constitutional limitations"); *Ploski v. Medenica*, No. 17-CV-2306, 2019 WL 4014193, at *3 (N.D. Ill. Aug. 26, 2019) ("[T]he Court is not aware of any precedent stating that freedom from battery in the police training context is a constitutional right.").

Because Police Defendants did not violate Plaintiff's constitutional rights and, even if they did, such rights were not clearly established, Police Defendants are entitled to qualified immunity as to Plaintiff's federal claims.

### V. Police Defendants Did Not Violate Plaintiff's Right to Adequate Medical Care.

Plaintiff has not plausibly alleged either that the constitutional right to medical care applied to him or that Police Defendants violated that right if it did apply. The deliberate indifference standard applies under circumstances distinguishable from the context here. First, a person must be in custody, which is not co-extensive with seizure. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1316 (10th Cir. 2002) (addressing the right to medical care in a Due Process claim brought by a pre-trial detainee in "an analysis identical to that applied in Eighth Amendment cases"). Second, it was not long from the time Plaintiff started the Dynamic Action Drill until he was taken to the hospital, and during that time the Police Defendants twice requested assistance from paramedics. It is unclear what additional medical care the Police Defendants, who are not medical professionals, should have provided to Plaintiff.

### VI.     Plaintiff has not Sufficiently Alleged Municipal Liability under *Monell*.

Plaintiff asserts that he has sufficiently, and individually, pleaded all five methods of imposing municipal liability, stating: "As part of an ongoing pattern, Moses suffered injury during the execution of Denver's annual, official, long-implemented 'Fight Day' training regimen. This program is official, specific, approved by all relevant Denver Police policymakers and their delegates, and fairly attributable to Denver as a city." (Response at 26.).  Naming the official policy, however, is only one part of establishing municipal liability.  Plaintiff must also sufficiently allege that the City was both deliberately indifferent to and caused the resulting constitutional violation. He has not done so.

Although there may have been injuries during the Dynamic Action Drill in the past, not all physical injuries rise to the level of constitutional injuries.  Plaintiff does not allege that there have been constitutional violations found—or even alleged—arising out of the Dynamic Action Drill in the past.  Nor does Plaintiff allege that there has previously been any physical injury arising out of a combination of the Dynamic Action Drill and a recruit's pre-existing condition, such that the City would have been on notice of a potential constitutional injury.  It cannot be said that "a violation of federal rights is a highly predictable or plainly obvious consequence" of any of Plaintiff's alleged official policies. *Hinkle v. Beckham Cnty. Bd. of Cnty. Commissioners*, 962 F.3d 1204, 1241 (10th Cir. 2020).

Finally, and importantly, there can be no *Monell* liability if an officer does not commit a constitutional violation.  *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998).  Thus, because Plaintiff has failed to state a claim that any

11

Police Defendant violated Plaintiff's constitutional rights, Plaintiff has also failed to state a claim for *Monell* liability against the City.

### VII. City Defendants Did Not Raise Worker's Compensation Exclusivity Against Federal Claims and Whether It Applies to State Claims is an Open Question.

Plaintiff argues that the "exclusivity immunity rules" of the Colorado's Worker's Compensation Act cannot bar "federal civil rights claims." (Response at 28-29.) City Defendants agree, which is why they did not make any such argument in their motion to dismiss.

Plaintiff's discussion of federal preemption in *Rosa v. Cantrell* does nothing to respond to Defendant's actual argument—that the WCA bars *state* claims. Plaintiff then argues that *Horodyskyj v. Karanian* holds that "federal and state civil rights claims are not barred by co-employee immunity because rigidly applying that rule would thwart strong public policies"; however, a review of this opinion elicits no holding of the sort. In *Horodyskyj*, the Court held that tort claims related to sexual harassment are not barred by the WCA, because they are not the types of assaults that are compensable by the WCA. 32 P.3d 470, 478, 480 (Colo. 2001). In contrast here, Plaintiff's state claims have been redressed through the WCA, and if anything, it follows that those claims are now barred by the WCA.

Plaintiff next argues that the Enhance Law Enforcement Integrity Act, C.R.S. § 13-21-131 ("ELEIA"), prohibits police from invoking WCA co-employee immunity on liability or damages. (Response at 30). No court has interpreted the WCA in light of ELEIA, and so the determination of which statute controls here is an open state law question. As

12

Plaintiff points out, it is presumed that the "legislature is aware of its own enactments and existing case law precedent." *LaFond v. Sweeney*, 343 P.3d 939, 943 (Colo. 2015). Thus, when drafting the ELEIA, the legislature understood that the WCA's language "abolish[ing]" "all causes of action" on account of the "personal injury to any such employee" would include actions brought under the ELEIA. C.R.S. § 8-41-102. This explains why, unlike the Colorado Governmental Immunity Act, which is expressly excluded in the ELEIA, the legislature chose not to enumerate the WCA as an exclusion and does not discuss causes of action that have been "abolished" by statute. *See* C.R.S. § 13-21-131(2)(a); *see also Cain v. People*, 327 P.3d 249, 253 (Colo. 2014) ("Under the rule of interpretation *expressio unius est exclusio alterius*, the inclusion of certain items implies the exclusion of others." (citation omitted)).

## CONCLUSION

For the foregoing reasons, City Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss the claims against the City Defendants in their entirety.

13

Respectfully submitted this 17th day of January, 2025.

GARNETT POWELL MAXIMON BARLOW & FARBES

*s/ Stanley L. Garnett*
Stanley L. Garnett, Reg. No. 12282
David D. Powell, Reg. No. 16152
Elaina Shively, Reg. No. 42737
Lys Runnerstrom, Reg. No. 47423
Kristin L. Arthur, Reg. No. 52397
1125 17th Street, Suite 2200
Denver, CO 80202
Phone: (303) 991-3344
stan.garnett@garnettlegalgroup.com
david.powell@garnettlegalgroup.com
elaina.shively@garnettlegalgroup.com
lys.runnerstrom@garnettlegalgroup.com
kristin.arthur@garnettlegalgroup.com

*Attorneys for Defendants City and County of Denver, Colorado; Todd Gentry; Stephen Marino; Anthony Norman; Felipe Cervantes; Kyle Carter; Johnna Aitken; Lisa Aitken-Nelson; Jason Moore; Damon Roman; E. M. Alfaro; and Brian Camozzi*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 17th day of January, 2025, a true and correct copy of the foregoing **REPLY IN SUPPORT OF CITY OF DENVER AND POLICE DEFENDANTS' MOTION TO DISMISS** was electronically filed using the Court's CM/ECF system upon the following:

John R. Holland
Anna Holland Edwards
Erica Grossman
Dan Weiss
Holland, Holland, Edwards & Grossman, LLC
1437 High Street
Denver, CO 802018
(303) 860-1331
john@hheglaw.com
anna@hheglaw.com
erica@hheglaw.com
dan@hheglaw.com
*Attorneys for Plaintiff*

Darold W. Killmer
Reid R. Allison
Killmer Lane
1543 Champa St., Suite 400
Denver, CO 80202
(303) 571-1000
dkillmer@killmerlane.com
rallison@killmerlane.com
*Attorneys for Plaintiff*

Anthony E. Derwinski
Michele S. Carey
Ruegsegger Simons & Stern, LLC
1700 Lincoln St., Suite 4500
Denver, CO 80203
(303) 575-8026
aderwinski@rs3legal.com
mcarey@rs3legal.com
*Attorneys for Defendants Denver Health and Hospital Authority, Courtney Wham, and Taegin Sung*

*s/ Tracy Williams*
Tracy Williams
