# EXHIBIT A

| District Court, Boulder County, State of Colorado<br>1777 Sixth Street, Boulder, Colorado 80302<br>(303) 441-3750 | DATE FILED<br>November 12, 2023 5:45 PM<br>CASE NUMBER: 2022CV30614 |
|---|---|
| **KYLE TERMIN**<br>*Plaintiff,*<br><br>v.<br><br>**CURTIS JOHNSON, in his official capacity as Sheriff of Boulder County, Colorado, GENE TAYLOR, MARIO MOORE, and DON SHEPARD,**<br>*Defendants.* | ▲ **COURT USE ONLY** ▲ |
| *Attorneys for Plaintiff*: Scott Jurden, Sarah Croog & Jonathan Greenlee<br><br>*Attorneys for Defendant Gene Taylor:* Josh A. Marks<br><br>*Attorneys for Defendants Don Shepard, Mario Moore, & Curtis Johnson*: Colin J. Mayberry, Catherine "Trina" Ruhland & Eric Ziporin | Case Number: **2022CV30614**<br><br>Div. **2**      Ctrm. **I** |
| **ORDER RE DEFENDANTS' JOINT MOTION FOR DETERMINATION OF LAW REGARDING AVAILABILITY OF COMMON LAW IMMUNITY** | |

This matter is before the Court on Defendants' Joint Motion for Determination of Law, filed August 18, 2023 ("Motion"). Plaintiff filed a Response on August 24, 2023, and Defendants filed a Reply on September 7, 2023.

The Motion seeks an Order under C.R.C.P. 56(h), determining as a matter of law that the common law public official immunity doctrine is available as a defense to claims brought under C.R.S. § 13-21-131(1) ("Section 131"). Section 131 was enacted in 2020 to provide a state law counterpart to 42 U.S.C. § 1983. Defendants Taylor, Shepard, and Moore maintain that although Section 131 expressly prohibits defenses under the Colorado Governmental Immunity Act

1

("CGIA") and qualified immunity, it does not prohibit state common law immunity defenses. In particular, Defendants contend that the term "qualified immunity," as used in Section 131, refers exclusively to the doctrine of federal qualified immunity. Defendants maintain that Section 131 is ambiguous, and that legislative history supports their interpretation. Additionally, Defendants also seek a ruling under Rule 56(h) that the common law immunity defense is available against Plaintiff's two tort claims (assault & battery and negligence).

Plaintiff Kyle Termin counters that Section 131 expressly prohibits common law immunity as a defense by virtue of its prohibition against qualified immunity. In further support of this interpretation, Plaintiff asserts that the legislative history of Section 131, including the revision of subsection (4) of the draft statute to address officers' concerns about exposure to personal liability, reveals the legislature's intent to not provide blanket immunity for officers acting in good faith. Plaintiff additionally argues that recent case law interpreting Section 131 supports his interpretation.

## I.     BACKGROUND

This action arises from an incident at the Boulder County Jail on April 4, 2022. Plaintiff Kyle Termin was a pre-trial detainee. At the time of the incident, Defendants Gene Taylor, Don Shepard, and Mario Moore were Boulder County Sheriff's Office ("BCSO") deputies assigned to the Jail. Defendant Taylor is no longer employed by the BCSO. Defendant Curtis Johnson is the Boulder County Sheriff, and is named in his official capacity as Sheriff.[1]

Plaintiff alleges that Defendant Taylor used excessive force against him, and that Defendants Shepard and Moore took no actions to stop the excessive force. He has brought claims

---

[1] Curtis Johnson replaced Joe Pelle as Boulder County Sheriff on January 10, 2023. Because Sheriff Pelle was named on his official capacity, Sheriff Johnson is now named. The Court notes that Sheriff Johnson did not join the Motion. As used in this Order, therefore, the term "Defendants" refers to Defendants Taylor, Shepard, and Moore.

2

against Defendant Johnson for negligent operation of the Jail and respondeat superior (employer liability for actions of employees). Plaintiff has brought claims against Defendants Taylor, Shepard, and Moore under Section 131 (violation of state constitutional rights). He also has claims against Defendants Taylor and Shepard for assault & battery and negligence, and against Defendant Moore for negligence. Amended Complaint, filed November 3, 2022. Defendants deny these claims, asserting that the use of force was justified and appropriate. As affirmative defenses, they invoked all common law and statutory immunities that may be available. Defendant Taylor has brought counterclaims against Plaintiff for assault and/or battery. Answer & Counterclaims, filed November 22, 2022.

A 5-day jury trial is currently scheduled to begin the week of December 4, 2023.

## II.    STANDARD OF REVIEW

C.R.C.P. 56(h) permits a party to move for determination of a question of law and allows a court to decide that question where no facts are in dispute. Through the Motion, Defendants are not requesting immunity. Rather, they seek a legal conclusion that common law public official immunity is available for each of them to assert against Plaintiff's claims, particularly Plaintiff's claim under Section 131. Plaintiff does not dispute that the question of whether common law public official immunity is available is appropriate for determination under Rule 56(h). Thus, resolution of this Motion purely involves a determination as a matter of law.

## III.    ANALYSIS

Resolution of the Motion first requires the Court to determine whether common law public official immunity was foreclosed by passage of the Colorado Governmental Immunity Act ("CGIA"), and if not, whether the immunity applies to Plaintiff's Section 131 claims. In evaluating whether the immunity applies to Section 131 claims, the Court must first determine whether

3

Section 131 is ambiguous. If so, the Court must employ rules of statutory construction to determine legislative intent.

### A. Common Law Public Official Immunity Was Not Foreclosed by the CGIA

Prior to enactment of the CGIA, public officials, including peace officers, were entitled to official immunity for (1) discretionary acts; (2) which were not malicious in nature or were done in good faith. *Trimble v. City and County of Denver*, 697 P.2d 716, 728-29 (Colo. 1985). In evaluating what type of immunity a public official exercising discretionary acts should have, the Court held that "an official performing discretionary acts within the scope of his office enjoys only qualified immunity." *Id.* at 729. One year later, the Colorado Supreme Court applied public official immunity to police officers. *Leake v. Cain*, 720 P.2d 152, 163-64 (Colo. 1986). In *Leake*, the Court granted official immunity to patrol officers who had released rather than arrested an intoxicated teen, after which the teen drove and killed others. The Court held that the officers were exercising discretion in making the determination about whether to take the individual into protective custody. *Id.* The Court noted that a "public official performing discretionary acts within the scope of his office enjoys qualified immunity." *Id.* at 163.

The CGIA provides broader immunity to public officials. C.R.S. § 24-10-118(2). Unlike common law immunity, the CGIA applies to all actions, whether or not discretionary. *See, e.g., Moody v. Ungerer*, 885 P.2d 200, 204-05 (Colo. 1994). Critically, the CGIA did not eliminate common law immunity as a defense, and indeed, noted that statutory immunity was supplemental to common law immunity. C.R.S. § 24-10-118(4) ("[t]he immunities provided for in this article shall be in addition to any common-law immunity applicable to a public employee"). Further, the Court is unaware of any Colorado appellate caselaw eliminating or abolishing common law public official immunity.

4

Since the CGIA was enacted, Colorado courts have also permitted public officials to raise the defense of qualified immunity when they are sued for civil rights violations under 42 U.S.C. § 1983. *See Moody*, 885 P.2d at 204-05. Qualified immunity provides civil immunity to public officials where the conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021). The criteria for determining qualified immunity is thus different from criteria to establish common law immunity under state law. Notwithstanding the difference, Colorado courts have used the term "qualified immunity" to refer to defenses under state law, including public official statutory immunity under C.R.S. § 24-10-118(2) and to state common law immunity. *See City of Lakewood v. Brace*, 919 P.2d 231, 245-46 (Colo. 1996) (statutory); *Leake*, 720 P.2d at 163 (common law).

In short, although the CGIA essentially rendered common law public official immunity dormant due to its broader protection, the CGIA expressly recognized that its statutory immunity was not supplanting common law immunity. Additionally, Colorado courts have not overruled or abolished common law public official immunity.

> **B. Section 131 is Ambiguous as to Whether Common Law Immunity May be Raised as a Defense**

The General Assembly enacted Section 131 in 2020, through passage of SB 20-217. The intent of the legislation is to provide a remedy against peace officers who, under color of law, deprive a plaintiff of a right secured by the Colorado Constitution's bill of rights. *Ditirro v. Sando*, 520 P.3d 1203, 1205 (Colo. App. 2022) (holding that Section 131 does not allow a plaintiff to file a direct action against the employer of a peace officer). Subsection 1 provides:

> A peace officer, as defined in section 24-31-901(3), who, under color of law, subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights that create binding obligations on government actors secured by the bill of rights, article II of the state constitution,

5

is liable to the injured party for legal or equitable relief or any other appropriate relief.

Section 131 directly addresses potential defenses to civil claims brought under subsection (1).  Under C.R.S. § 13-21-131(2)(a), an officer's assertion of CGIA and any other statutory defense is expressly disallowed.  Subsection (2)(a) provides:

> Statutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section.  The "Colorado Governmental Immunity Act", article 10 of title 24, does not apply to claims brought pursuant to this section.

Subjection (2)(b) then expressly prohibits qualified immunity as a defense: "Qualified immunity is not a defense to liability pursuant to this section."  The term "qualified immunity" is undefined.  C.R.S. § 13-21-131(2)(b).

When a statute is unambiguous and the intent appears with reasonable certainty, the analysis is complete.  *Dittiro*, 520 P.2d at 1209 (citations omitted).  A statute is ambiguous if it is susceptible to more than one reasonable interpretation.  *McCoy v. People*, 442 P.3d 379, 389 (Colo. 2019).  The overriding goal of statutory construction is to effectuate the legislature's intent.  *Department of Revenue v. Agilent Technologies, Inc.*, 441 P.3d 1012, 1016 (Colo. 2019).  In seeking to do so, courts look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of the statute's parts, applying words and phrases in accordance with their plain and ordinary meaning.  *Id.*  Statutory construction that renders any words or phrases superfluous or that would lead to illogical or absurd results are to be avoided.  *Id.*

Given that the term "qualified immunity" is undefined in Section 131, the Court may refer to dictionary definitions to determine the plain and ordinary meaning of the term.  *People v. Daniels*, 240 P.3d 409, 411 (Colo. App. 2009) (citations omitted).  Merriam Webster's Dictionary definition defines qualified immunity as:

6

"immunity from lawsuits that is granted to public officials (such as police officers) for acts that violate someone's civil rights if it can be shown that the acts do not violate clearly established statutory or constitutional rights or which a reasonable person would be aware."

See https://www.merriam-webster.com/dictionary/qualifiedimmunity.

Similarly, Black's Law Dictionary defines the term as follows:

"Immunity from civil liability for a public official who is performing a discretionary function, as long as the conduct does not violate clearly established constitutional or statutory rights."

Black's Law Dictionary, 11th ed. (2019).

In contrast, as noted above in section (A), Colorado courts have held that the term "qualified immunity" is afforded to "an official performing discretionary acts within the scope of his office" and which were not malicious but performed in good faith. *Trimble*, 697 P.2d at 729.

Based on the competing definitions of "qualified immunity" from dictionary definitions and Colorado caselaw, the Court concludes that Section 131(2)(b) is susceptible to more than one reasonable interpretation. The term could be construed to refer to federal qualified immunity, given that at least some dictionary definitions define the term consistently with the test used for federal qualified immunity. The criteria used to determine whether the defense may go forward is distinct, as federal qualified immunity is a more lenient standard than Colorado's common law immunity. In contrast, the term could be construed to refer to common law public official immunity, given the use of the term in certain Colorado caselaw, including *Trimble*.

Therefore, as used in subsection (2)(b), the term qualified immunity may plausibly refer to federal qualified immunity or more broadly to common law immunity of any kind. Given the ambiguity, the Court must employ other aids of statutory interpretation.

7

### C. When Canons of Statutory Construction are Applied, the Court Concludes that Section 131(2)(b) Does Not Prohibit Common Law Public Official Immunity as a Defense

When a statute is ambiguous, a court may employ multiple canons of statutory construction to discern the legislature's intent. These canons include reading the statutory provisions harmoniously and in context, evaluating legislative history of the bills which resulted in the statutory language, and considering statements made by sponsors of the legislation. C.R.S. § 2-4-203(1)(c); *Mesa County Land Conservancy v. Allen*, 318 P.3d 46, 51-52 (Colo. App. 2012).

In addition to giving effect to the specific language used, the court must construe Section 131 as a whole, giving consistent, harmonious and sensible effect to all of its parts. And the court may consider the legislative history of the statute, including amendments. As noted by Defendants, in addition to precluding statutory immunities, this initial draft of the bill stated that:

> Neither qualified immunity, nor a defendant's good faith but erroneous belief in the lawfulness of his or her conduct, is a defense to liability pursuant to this section.

Exhibit A, p. 8.

Under the initial version of subsection (4), the indemnification provision, political subdivisions were required to indemnify peace officers, except that peace officers were personally liable for 5% or $100,000 of the judgment or settlement, whichever is less. *Id.*

The amended version of SB 20-217 (Motion, Exhibit B), as amended on second reading June 8, 2020, amended subsection (2)(b) to provide that "qualified immunity is not a defense to liability pursuant to this section." Exhibit B, p. 13. This amendment also revised subsection 4 and provided officers with greater protection from personal liability. The amendment eliminated personal exposure, except when the "peace officer's employer determines that the officer did not act upon a good faith and reasonable belief that the action was lawful." Exhibit B, p. 14. In such

8

an event, the officer is personally liable for up to $25,000 or 5% of the judgment or settlement, whichever is less. *Id.*

As advanced by Defendants in the Motion, the fact that subsection (2)(b) was pared down to preclude only qualified immunity demonstrated the General Assembly's intent to eliminate federal qualified immunity but to preserve the ability of police officers to assert good faith, reasonable actions as a defense when performing discretionary functions. Critically, the initial draft included both qualified immunity and a defendant's good faith belief as separate defenses that were not available. The final draft of subsection (2)(b) prohibits only qualified immunity, leading to the interpretation that the General Assembly intended to preserve defenses based on good faith belief.

In his Response, however, Plaintiff plausibly argues that accepting the interpretation advanced by Defendants, that peace officers acting in good faith have immunity from liability, renders the language of subsection (4)(a) superfluous. The requirement of the employer to indemnify peace officers from any judgment or settlement when they act upon a good faith reasonable belief that the action was lawful indicates that the legislature did not intend to provide immunity to peace officers from civil liability in such circumstances. Interpretations which render provisions or terms superfluous are to be avoided.

In Reply, however, Defendants note that assertion of good faith immunity is procedurally distinct from an employer's ability to require the peace officer to be financially responsible for part of the judgment or settlement. Liability is determined by a court or a jury, while the peace officer's ultimate financial responsibility is determined by the employer after it conducts an investigation. The unsuccessful assertion of good faith immunity to liability does not control the indemnification decision because it must result from the employer's independent investigation

under subjection (4)(b).  Thus, the indemnification provision may be read harmoniously with Defendants' proffered interpretation of subsection (2)(b).

Additionally, the Court may give weight to statements made by legislators.  "Although not conclusive proof of legislative intent, statements made during committee hearings reveal the understanding of legislators and thus help identify their intent." *Mesa County Land Conservancy, Inc. v. Allen*, 318 P.3d 46, 51-52 (Colo. App. 2012); *see also People v. Sprinkle*, 489 P3d 1242, 1246 (Colo. 2021) (although statements made before a legislative committee are not proof of legislative intent, they provide guidance in interpreting the statute).  The "testimony of a bill's sponsor concerning its purpose and anticipated effect can be powerful evidence of legislative intent." *Id.*

Here, neither party has provided testimony of any of the bill's prime sponsors regarding the legislative intent.  Defendants, however, rely on statements made by sponsors, including legislators' statements made during the House and Senate hearings on SB 20-217.  Motion, pp. 7-8; Exhibits C & D.

In the June 8, 2020 Senate Hearing, Senator Gardner indicated that SB 20-217 was intended to be a state counterpart to § 1983 claims and stated the proponents of the bill "did not want so-called qualified immunity to be operative."  He then describes qualified immunity as "kind of a creature of federal law."  Senator Gardner then characterized the defense as a "good faith defense."  He goes on to state that he believed bill proponents wished to continue to allow a good faith but reasonable belief as a defense but not good faith and erroneous belief as a defense.  According to Senator Gardner, it was his belief that if the amendment was adopted "whatever good faith defense exists in the Fourth Amendment Juris Prudence [sic] to this civil cause of action and liability on

10

depravation [sic] of constitutional rights will continue to be as it is . . . The only thing that will be removed is the qualified immunity defense." Exhibit D, pp. 6-9.

Senator Foote then proceeded to also distinguish qualified immunity from the good faith reasonable belief defense. He noted the expansion of qualified immunity in federal jurisprudence, and emphasized that under the amendment, qualified immunity will not be a viable defense. Exhibit D, pp. 9-11.

These statements, made by bill sponsors, support Defendants' interpretation that the good faith reasonable belief exception was distinct from the concept of qualified immunity.

On balance, therefore, the Court concludes that canons of statutory construction, including SB 20-217's legislative history, supports the interpretation advanced by Defendants. Most critically, the amendment to subsection (2)(b) demonstrates the legislative intent to (1) distinguish qualified immunity from good faith defenses, and (2) to prohibit only qualified immunity. While there is some force to Plaintiff's argument about the contemporaneous amendment to subsection (4), the subsections can be read harmoniously under Defendants' interpretation and subsection (4)'s indemnification provision is not superfluous. Additionally, the statements by the bill's sponsors generally support Defendants' interpretation and recognize legislative distinction between federal qualified immunity and common law good faith immunity.

Lastly, the caselaw cited by Plaintiff on pp. 9-11 of his Response does not materially assist in the interpretation of Section 131. As noted by Defendants, *Dodge v. Padilla*, 2023WL4502397 (Colo. App. 2023) and *Cisneros v. Elder,* 506 P.3d 828 (Colo. 2022) involved tort claims under the CGIA, which involves questions of sovereign immunity. The discussion of Section 131 in *Sawyers v. Norton,* 962 F.3d 1270, 1289, n.23 (10th Cir. 2020) is dicta.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that common law public official immunity was not foreclosed by passage of the CGIA.  The defense is therefore available to Defendants in response to Plaintiff's two tort claims.

Additionally, the Court concludes that Section 131 does not prohibit the invocation of common law public official immunity in response to claims brought under newly enacted Section 131.  Subsection (2)(b) of the statute is ambiguous, and canons of statutory construction generally support Defendants' proffered interpretation.

The Motion is therefore granted.  Defendants may assert the common law good faith defense to each of the claims against them.

SO ORDERED this 12th day of November, 2023

BY THE COURT

*[signature: Robert R. Gunning]*

Robert R. Gunning
District Court Judge