IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02353-GPG-TPO

VICTOR MOSES,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO,
DENVER HEALTH AND HOSPITAL AUTHORITY,
TODD GENTRY, individually,
STEPHEN MARINO, individually,
ANTHONY NORMAN, individually,
FELIPE CERVANTES, individually,
KYLE CARTER, individually,
JOHANNA AITKEN, individually,
LISA AITKEN-NELSON, individually,
JASON MOORE, individually,
DAMON ROMAN, individually,
E. M. ALFARO, individually,
BRIAN CAMOZZI, individually,
COURTNEY WHAM, individually, and
TAEGIN SUNG, individually,

    Defendants.

## ORDER

**Timothy P. O'Hara, United States Magistrate Judge.**

Before the Court are two related Motions: (1) Defendants' Motion to Stay [ECF 43] which is fully briefed [ECF 43, 57 (Response), & 62 (Reply)], and (2) Defendants' Motion for Extension of Time to Respond to Plaintiff's First Written Discovery Request [ECF 69], to which Plaintiff filed a Response [ECF 71]. For the following reasons, the Motion to Stay [ECF 43] is **granted in part**. The Court determines that additional briefing would not materially assist the Court in deciding Defendants' Motion for Extension of Time [ECF 69]. Accordingly, the Court issues this

Order without awaiting Defendants' reply, and the Motion for Extension of Time [ECF 69] also will be **granted in part**.

## FACTUAL BACKGROUND

According to the Complaint, in the early part of 2022, Plaintiff began the application process to become a Denver Police Officer. ECF 3 at ¶1. He subsequently "passed the interview and background investigation stages," and was hired. *Id.* at ¶¶28-29. In the Medical History Form required by the Denver Police Department (DPD), Plaintiff disclosed that he had "sickle cell trait," indicating "[b]oth my parents and I have the trait but never had any problems." *Id.* at ¶35.

As part of Plaintiff's employment, he was required to complete the DPD Police Academy ("the Academy"). *Id.* at ¶38. One of the components of the Academy was the Dynamic Action Drill (DAD), a program designed to teach recruits about arrest control techniques. *Id.* at ¶¶39-41. There are four stations in the DAD, each requiring recruits to participate in a physical drill. *Id.* at ¶¶43-47.

On January 6, 2023, Plaintiff was one of approximately 40 recruits that participated in the DAD at the Academy. *Id.* at ¶62. During the second station of the event, due to the physical strain he experienced, Plaintiff collapsed. *Id.* at ¶¶66-70. Although Plaintiff's condition deteriorated and he began demonstrating multiple symptoms of distress, he was encouraged to continue by the paramedics and officers conducting the DAD. *Id.* at ¶¶80-96. Plaintiff eventually "'became limp' and unresponsive." *Id.* at ¶97. By the time Plaintiff was taken to the emergency room, he "developed severe compartment syndrome, rhabdomyolysis, malignant hyperthermia, and severe hyperkalemia." *Id.* at ¶109.

Plaintiff's injuries resulting from the event are severe. He spent over four months in the hospital and has "undergone many surgeries, including below the knee amputations of both legs,

multiple fasciotomies, and arm surgeries." *Id.* at ¶110. He also suffered "severe internal injuries to multiple organs, which continues to require significant medical care." *Id.*

## PROCEDURAL BACKGROUND

On July 30, 2024, Plaintiff brought suit in Denver County District Court, alleging six claims against the City and County of Denver, Denver Health and Hospital Authority, and 13 individuals. ECF 3. Plaintiff's first claim is against "All Individual Police Defendants" for a violation of Excessive Force and Seizure under the Colorado Constitution. *Id.* at ¶¶347-367. Plaintiff's second claim is against "All Defendants" for a violation of 42 U.S.C. §1983 based on a Fourth Amendment violation (Excessive Force/Seizure). *Id.* at ¶¶368-410. Plaintiff's third claim is against the "Individual Police Defendants" for Due Process and Inalienable Rights Deprivations under the Colorado Constitution. *Id.* at ¶¶411-428. Plaintiff's fourth claim is against Paramedic Defendants Courtney Wham and Taegin Sung for Willful and Wanton Acts or Omissions in violation of Colorado law. *Id.* at ¶¶429-446. Plaintiff's fifth claim is against Denver Health and Hospital Authority for Negligence in violation of Colorado law. *Id.* at ¶¶447-461. Plaintiff's sixth claim is against "All Defendants" for a violation of 42 U.S.C. §1983 based on a 14th Amendment violation (Deliberate Indifference to Medical Needs and Conscience Shocking Behavior). *Id.* at ¶¶462-500.

On August 26, 2024, Defendants filed a Notice of Removal to this Court. ECF 1. On October 21, 2024, counsel for all Defendants filed Motions to Dismiss. ECF 32, 33, & 34. Defendants City and County of Denver, Todd Gentry, Stephen Marino, Anthony Norman, Felipe Cervantes, Kyle Carter, Johnna Aitken, Lisa Aitken-Nelson, Jason Moore, Damon Roman, E.M. Alfaro, and Brian Camozzi (City of Denver Defendants) assert that qualified immunity bars the federal claims against the individual Defendants in the group. ECF 32 at pp. 20-21. Defendants

3

Wham and Sung also both assert qualified immunity. ECF 33 at pp. 7-11. On December 16, 2024, Plaintiff responded to the three Motions to Dismiss. ECF 46, 47 & 48. On January 16 and 17, 2025, Defendants replied. ECF 62, 63, & 64. All three Motions are pending resolution.

On December 11, 2024, all Defendants filed a joint Motion to Stay. ECF 43. In it, Defendants seek to "stay discovery and delay the entry of a scheduling order until resolution of the pending motions to dismiss." *Id.* at pp. 1-2. Defendants note that each of Plaintiff's claims is currently subject to one or more Defendants' Motions to Dismiss. *Id.* at p. 2. Defendants recognize that stays are generally disfavored, *id.* at p. 3, but argue that since multiple individual Defendants have raised issues of qualified immunity, a stay is appropriate. *Id.* at p. 3 (citing *Johnson v. Fankell*, 520 U.S. 911, 915 (1997); *Dawson v. Cont'l Ins. Co.*, No. 13-cv-03511-PAB-KMT, 2014 WL 1210285, at *1 (D. Colo. Mar. 24, 2014); *Smith-Bey v. Reid*, No. 08-cv-01356-DME-KLM, 2008 WL 5216247, at *1 (D. Colo. Dec. 11, 2008)). Defendants believe the factors described in *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 02-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) support the imposition of a stay. *Id.* at pp. 3-6.

Plaintiff objects to any stay, pointing to the clear preference in this District disfavoring such delays. ECF 57 at p. 2 (citing *McGinn v. El Paso Cty.*, 640 F. Supp. 3d 1070, 1074, (D. Colo. Nov. 14, 2022) (collecting cases)). Plaintiff notes that asserting qualified immunity should not constitute an "automatic ticket" to delay discovery in this case, especially when the assertion of qualified immunity does not apply to all Defendants or all claims. *Id.* at pp. 3-4. Plaintiff argues the *String Cheese* factors do not support a stay. *Id.* at pp. 6-10. Plaintiff also suggests that this Court take a "preliminary peek" at the Motions to Dismiss to gauge whether the Motions have a likelihood of success. *Id.* at pp. 6-7.

4

Defendants, in reply, do not believe that a "preliminary peek" by this Court is necessary or appropriate. ECF 62 at pp. 3-4. Defendants encourage the Court to conduct a fact-based analysis rather than to simply "follow the crowd." *Id.* at p. 4. Defendants cite a number of additional cases where stays have been deemed appropriate, in whole or in part, based on similar circumstances. *Id.* at pp. 4-7 (citing *Moses-El v. City & Cnty. of Denver*, No. 17-cv-0318-MSK-MJW, 2018 WL 11309813, at *3 (D. Colo. Apr. 18, 2018);[1] *Vaughn v. Rhea*, No. 04-cv-01002-MSK-CBS, 2006 WL 994458, at *1 (D. Colo. Apr. 13, 2006);[2] *Wanstall v. Armijo*, No. 13-cv-02789-PAB-BNB, 2014 WL 4636457, at *3 (D. Colo. Sept. 16, 2014);[3] *Estate of George, City of Rifle*, No. 20-cv-00522-CMA-GPG, 2020 WL 13825346, at *2 (D. Colo. Nov. 6, 2020)).

On April 7, 2025, Defendants filed a related Motion seeking an extension of time to respond to Plaintiff's discovery requests.[4] ECF 69. Defendants note that, consistent with his position relating to the Motion for Stay, Plaintiff opposes such an extension of responses to written discovery. *Id.* at p. 2. On April 15, 2025, Plaintiff filed his Response, objecting to the Defendants' requested extension. ECF 71.

## GOVERNING STANDARD

The Federal Rules of Civil Procedure do not expressly provide for a stay of discovery or other proceedings. Instead, a court "has broad discretion to stay proceedings as an incident to its

---

[1] Magistrate Judge Michael J. Watanabe granted a partial stay, pausing discovery as to the individual defendants but not as to the municipality defendant. 2018 WL 11309813, at *3.

[2] Judge Marcia S. Krieger suspended a portion of the discovery against one individual defendant. 2006 WL 994458, at *2.

[3] Chief Judge Philip A. Brimmer granted a partial stay of depositions of the individual defendants. 2014 WL 4636457, at *3.

[4] Plaintiff's First Written Discovery Requests were served on City of Denver Defendants on March 10, 2025. ECF 69 at p. 2. Responses were due on April 9, 2025. *Id.*

5

power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706-07 (1997) (citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)). A court also "has considerable discretion over the timing of discovery" broadly speaking. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coors*, 357 F. Supp. 2d 1277, 1280 (D. Colo. 2004) (citations omitted).

This District generally disfavors a stay of all discovery, but there are situations when good cause may exist to do so. *Chambers v. Bd. of Cnty. Com'rs of Cnty of Eagle*, No. 13-cv-00393-REB-MEH, 2013 WL 4052397, at *3 (D. Colo. Aug. 12, 2103) (citations omitted). Good cause exists when a dispositive motion raises the kind of legal issue that should be resolved as early as possible. *Namoko v. Milgard Mfg., Inc.*, No. 06-cv-02031-WDM-MEH, 2007 WL 1063564, at *1 (D. Colo. Apr. 6, 2007) (citing *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D 689, 692 (M.D. Fla. 2003)). Typically, that arises when a defendant claims immunity from suit or when there is a potential jurisdictional defect. *Chambers*, at *2 (collecting cases); *see also, Aurora Bank FSB v. Network Mortg. Servs., Inc.*, No. 13-cv-00047-PAB-KLM, 2013 WL 3146972, at *1 (D. Colo. Jun. 19, 2013) (collecting cases); *Medina v. Cram,* 252 F.3d 1124, 1127-28 (10th Cir. 2001) (directing courts to resolve the defense of qualified immunity at the earliest stage of litigation) (citations omitted).

In this case, all the individual Defendants invoke the defense of qualified immunity. The Supreme Court has emphasized the broad protection that qualified immunity affords, giving officials "a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier,* 516 U.S. 299, 308 (1996) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)); *Crawford-El v. Britton,* 523 U.S. 574, 598 (1998) ("[T]he trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense."). In other words, Defendants asserting qualified immunity may be shielded not only from

6

liability, but also against the burdens of litigation. *See Lucero v. City of Aurora*, No. 23-cv-00851-GPG-SBP, 2023 WL 5957126, at **3-5 (D. Colo. Sept. 13, 2023) (discussing in depth how the benefit of qualified immunity may extend to discovery). The Supreme Court reaffirmed this principle in *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) when it described "[t]he basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of *disruptive* discovery.'" (emphasis added) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)).

But a Defendants' assertion of qualified immunity "does not provide a broad protection against all discovery." *Wanstall*, 2014 WL 4636457, at *3 (citing *Rome v. Romero*, 225 F.R.D. 640, 645 (D. Colo. 2004)). Instead, according to the Supreme Court, qualified immunity protects officials from that discovery which is "'broad-reaching.'" *Rome*, 225 F.R.D. at 643 (quoting *Crawford-El*, 523 U.S. at 1593 at n.14). And in cases where an assertion of qualified immunity would not cover all the defendants or all the claims, "substantially similar discovery still may have to take place."[5] *McGinn v. El Paso County*, 640 F. Supp. 3d 1070, 1075 (D. Colo. 2022) (citations omitted). Indeed, resolving Defendants' claims of qualified immunity may itself justify the need for "at least some discovery." *Currier v. Doran*, 242 F.3d 905, 914 (10th Cir. 2001) (citing *Crawford-El*, 523 U.S. at 1593-94 at n.14) ("it did not follow that a defendant's claim of qualified immunity could always be resolved before at least some discovery was conducted.").

In evaluating a request for a stay of discovery, the following five factors guide the Court's determination:

---

[5] Here, the 13 individual Defendants have asserted qualified immunity as it relates to the two claims under 42 U.S.C. §1983. However, the City and County of Denver and Denver Health and Hospital Authority cannot claim qualified immunity. And Plaintiff brings several claims that are not covered by an assertion of qualified immunity. *See* ECF 1 (Claims I, III, IV, and V not covered by an assertion of qualified immunity).

>   1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay;
>   2) the burden on the defendants;
>   3) the convenience to the court;
>   4) the interests of persons not parties to the civil litigation; and
>   5) the public interest.

*String Cheese Incident, LLC,* 2006 WL 894955, at *2; *see also Hernandez v. Asset Acceptance, LLC*, 970 F. Supp. 2d 1194, 1205 (D. Colo. 2013) (weighing the factors and finding a stay appropriate in that case).

## ANALYSIS

### I.   Plaintiff's Interests

The Plaintiff makes a strong showing here in support of his interest that the case proceed expeditiously. Citing *Estate of Bailey v. City of Colo. Springs*, Plaintiff notes how over time witnesses' memories fade and documents become lost. ECF 57 at p. 7 (citing No. 20-cv-01600-WJM-KMT, 2020 WL 6743789, at *2 (D. Colo. Nov. 17, 2020)). This concern becomes more pronounced the longer a stay remains in place. *Id.* Plaintiff also points to the gravity of the Plaintiff's injuries as meriting a denial of any stay. *Id.* at p. 1.

The Plaintiff originally filed the Complaint on July 30, 2024. Due to the removal of the action and concomitant delay, Plaintiff has not received any responses to discovery requests although nearly eight months have passed.

In this Court's estimation, this first factor weighs strongly against a complete stay. Due to the gravity of the present case and the substantial time that the discovery process will take in a case of this magnitude, Plaintiff has a strong interest in starting the process as soon as possible.

### II.   Burden on Defendants

The second factor clearly favors the Defendants and merits against a complete denial of the stay. As a general rule, qualified immunity presents the kind of legal issue that should be

8

resolved early in litigation, and a defendant who asserts that defense should be protected from the burden of discovery. *See Iqbal*, 556 U.S. at 685. Due to the number of Defendants and the scope of the litigation in this case, discovery will no doubt be wide reaching and would impact Defendants significantly.

However, discovery in the present case will be wide reaching whether all, or some, of the assertions of qualified immunity are meritorious or not. The City and County of Denver and Denver Health and Hospital Authority are not entitled to qualified immunity, and their Motions to Dismiss are not sufficient to stay discovery. Also, Plaintiff brings state law claims to which the individual Defendants cannot claim qualified immunity. ECF 57 at P. 4. Other than the possibility that some claims against some individual Defendants may be dismissed under a qualified immunity theory and the burden of resulting, unnecessary discovery, Defendant points to no specific prejudice that it will suffer by participating in the discovery process.

And some discovery likely would be required "to elicit facts pertinent to the [qualified immunity] defense." *Love v. Grashorn*, No. 21-cv-02502-RM-NRN, 2022 WL 1642496, at * 4 (quoting *Estate of Ronquillo by & through Sanchez v. City & Cnty. of Denver*, No. 16-cv-01664-CMA-NYW, 2016 WL 10842586 (D. Colo. Nov. 14, 2016)). Just as the individual Defendants can invoke qualified immunity, "a private citizen is entitled to claim the timely protection of the law." *Id.* at *5 (citing *Sanchez v. Hartley*, No. 13-cv-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016)).

As a result, the Court concludes that the prejudice to the individual Defendants supports granting at least a partial stay.

9

**III.    Convenience to the Court**

The third factor—convenience to the Court—mostly favors Plaintiff. While the ruling on the Motion to Dismiss might narrow the scope of the litigation, which would foster judicial economy, *see Lucero*, 2023 WL 5957126 at *9, this Court also prioritizes the expeditious handling of claims. As stated by Magistrate Judge N. Reid Neureiter: "[h]aving cases sit in limbo, without any progress, while a dispositive motion takes months (or potentially a year) to be decided, is not in the Court's interest." *Love*, 2022 WL 1642496, at *5. As a result, the third factor weighs against a stay.

**IV.    Interests of Persons Not Parties to the Litigation**

The fourth factor—the interests of third parties—is neutral. Neither party cites to a specific third party that would be affected by a stay of discovery. ECF 43 at p. 6.

**V.    The Public's Interest**

The fifth factor—the public's interest—also weighs against a stay. Defendants point to the strong public policy supporting the qualified immunity doctrine and the potential unnecessary expenditure of public and private resources that discovery may cause. ECF 43 at p. 6. Plaintiff cites to the general idea that a stay harms the public because it prevents "the prompt and efficient handling of all litigation." ECF 57 at p. 9 (quoting *Lester v. Gene Exp., Inc.*, 09-cv-02648-REB-KLM, 2010 WL 743555, at *2 (D. Colo. Mar. 2, 2010)).

The present case is as tragic as they come. It has received national media attention. The Plaintiff's injuries are serious. Both parties deserve answers as to whether there will be legal culpability, and if so, by whom and for how much. In a case where the assertion qualified immunity only covers one-third (2 out of 6) of Plaintiff's claims, a complete stay would only prevent these

important questions from being answered. The public's interest therefore favors a denial of Defendants' Motion for Stay.

## VI.    Other Factors/Considerations

Although Plaintiff suggests that the Court should take a "preliminary peek" at Defendants' Motions to Dismiss, the Court issues this Order without considering the merits of the Motions to Dismiss, which have not been referred to the undersigned for recommendation. While there is nothing precluding this Court from analyzing the merits of the Defendants' Motions to Dismiss, *see e.g., Love*, 2022 WL 1642496, at **6-8, this approach is by no means universal. *Cf. Estate of George*, 2020 WL 13825346, at *2 (citing *Church Mut. Ins. Co. v. Coutu*, No. 17-cv-00209-RM-NYW, 2017 WL 3283090, at *3 (D. Colo. Aug. 2, 2017) (declining to look at the merits of the underlying dispositive motions)).

Importantly, the idea of a stay is not an all-or-nothing concept. The Court could allow discovery as to some Defendants or some claims, specifically, as to those defendants/claims not covered by the assertions of qualified immunity. However, in the Court's opinion, such an approach would be more likely to cause confusion than create efficiency.

Another more reasonable approach, one the Court intends to take, is to treat written and oral discovery separately. While written discovery imposes some burden on the Parties, it is much less than that imposed by the preparation and attendance at numerous witness and party depositions. As recognized by Chief Judge Philip Brimmer, "[d]epositions are generally the most burdensome aspect of discovery on individual defendants." *Wanstall*, 2014 WL 4636457, at *3 (citing *Herrera v. Santa Fe Pub. Schs.*, CIV 11-0422 JB/KBM, 2012 WL 6846393, *7 (D.N.M. Dec. 20, 2012)). As a result, the Court sees merit in allowing written discovery to proceed while

staying oral discovery for a period of 45 days.[6] After that, the Court will allow oral discovery to proceed expeditiously, as described below.

## CONCLUSION

On balance, the *String Cheese* factors weigh against staying all discovery indefinitely pending resolution of Defendants' Motion to Dismiss. However, due to the 13 individual Defendants' assertion of qualified immunity, some stay of discovery is appropriate. Therefore, this Court orders that the Parties may serve written discovery requests immediately, and all requests shall be answered as required by the Federal Rules of Civil Procedure. For Plaintiff's written discovery requests that have already been served, Defendants shall respond **on or before May 7, 2025**.

Accordingly, Defendants' Motion to Stay Discovery [ECF 43] is **granted, in part,** as it relates to oral discovery for a period of approximately 45 days (i.e., until **June 9, 2025**). Defendants' Motion is **denied** as it relates to written discovery.

If all Motions to Dismiss have not been resolved by **June 1, 2025**, the Plaintiff shall file a Motion to Lift the Stay including a proposed party deposition schedule contemplating deposition dates after June 9, 2025. The Defendants shall provide availability for party depositions to Plaintiffs in advance of the June 1st deadline and provide any response to the Motion to Lift the Stay by **June 8, 2025**.[7] The Court will then regulate the oral discovery process to allow oral

---

[6] The Court considered allowing non-party depositions to proceed and requested that the Parties to submit a list of non-party witnesses that are likely to be deposed. The parties did just that. ECF 68. However, upon reflection, such an approach would not save defense counsel much work at all considering that they would likely attend all depositions, whether they be witnesses or Defendants. Also, at the March 13, 2025 Hearing, Plaintiff's counsel did not seem to favor the idea of witness depositions proceeding first, preferring instead to depose the named Defendants first.

[7] Should any part of or all Motions to Dismiss be resolved in Plaintiff's favor prior to June 9, 2025, then Plaintiff may immediately file a Motion to Lift the Stay following conferral.

discovery to proceed while curbing broad-reaching oral discovery while the Motions to Dismiss remain pending.

City of Denver Defendants' Motion for Extension of Time to Respond to Plaintiff's Written Discovery Requests [ECF 69] is **granted in part**. City of Denver Defendants shall respond to Plaintiff's initial written discovery requests **on or before May 7, 2025**.

SO ORDERED.

DATED at Denver, Colorado, this 23rd day of April, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge